The Liberty Highway Co. et al. v. Callahan,
Admx., et al.

*Negligence—Motorman killed in collision with trailer drawn by motor truck—Common carrier liable when delegating carriage of goods to another—Truck driver, operating trailer rented from common carrier, not independent contractor—Trailer not "motor vehicle" within Michigan statute making owner liable—Reasonableness of municipal speed ordinance question for court—Clear and convincing evidence necessary to overcome presumption of reasonableness—Not error to hear evidence of reasonableness in jury's presence, when—Ordinance fixing maximum speed at fifteen miles, presumed valid—Evidence—Truck driver's statements, after accident, inadmissible as admissions by owner's agent—Statements contemporaneous with transaction, admissible as res gestae, when—Prejudicial to admit as res gestæ statements made long after accident—Special requests to charge jury—Error to refuse charge that violating ordinance negligence per se—Refusal of proper special request prejudicial, although covered by general charge—Charge that truck driver could assume electric car observing speed law properly refused—Charge erroneous intimating recovery for burns to deceased not caused by negligence—Error to leave to jury question of reasonableness of speed ordinance—Charge that recovery by motorman not defeated by failure to sound whistle erroneous, when—Burden of proof—Not sustained by proof inclining jury's minds towards affirmative claim—Burden on plaintiff to prove each material fact by preponderance of evidence—"Negligence" defined—Charge allowing recovery if "anybody's fault" was proximate cause, misleading, when—Word "fault" incorrectly used in charge as equivalent of "negligence"—Charge upon measure of damages for wrongful death, erroneous—Measure of damages is pecuniary loss sustained by beneficiaries—Election as between defendant truck owner and common carrier, not required.*

1. Corporation, engaged as common carrier of freight by motor truck, cannot delegate carriage of goods on public high-

way to third party so as to relieve itself of liability for negligent acts committed in performance of its duties as common carrier.

2. Duties of common carrier are nondelegable, and it is answerable for negligence of persons to whom it intrusts performance of part of its duties, if acts are done in performance of such duties while acting within scope of agreement for carriage.

3. In action for damages resulting from collision between electric car and trailer, rented from common carrier and attached to truck hauling freight and operated by an individual defendant, under agreement with a defendant corporation, chartered as common carrier, to transport freight over highways, carrier was not entitled to directed verdict on theory that driver was independent contractor.

4. Trailer, rented from common carrier, attached to truck owned by driver used for hauling freight, *held* not a "motor vehicle" within Comp. Laws Mich., 1915, Sections 4797 and 4825, making owners of motor vehicles liable for injuries by negligent operation while in hands of another.

5. In action for injuries resulting from collision of electric car with trailer, reasonableness of ordinance fixing speed of electric cars at not exceeding 15 miles per hour *held* for court.

6. In action for injuries from collision between electric car and trailer, court could hear evidence to determine whether speed ordinance was void for unreasonableness, and would not be justified in holding it void unless presumption of reasonableness was overcome by clear and convincing evidence.

7. In action for injuries caused by collision of electric car with trailer, hearing evidence relating to reasonableness of speed ordinance in presence of jury *held* not reversible error, though question is for court, unless evidence admitted was prejudicial.

8. Ordinance fixing maximum speed for electric cars through corporate limits of city at not to exceed 15 miles per hour is presumed to be valid.

9. Statements by truck driver involved in collision with electric car, that he saw car coming but thought he could make it, made long after accident, while police officer was taking

driver to police station, *held* not admissible as admissions of agent of defendant owning truck.

10. Statements which are contemporaneous with the transaction which they explain, and so identified with transaction as to constitute verbal acts, are admissible as part of *res gestæ*, limitation of word "contemporaneous" being determined by causal or psychological relation of statements with primary facts in controversy.

11. Statements by driver of truck with attached trailer which collided with electric car that he saw truck but thought he could make it, made long after accident, and while he was being taken to police station, *held* not so contemporaneous with main transaction as to constitute verbal act admissible as *res gestæ*, and admission of statements was prejudicial error.

12. In action for motorman's death from collision of electric car with trailer attached to defendant's truck, requested instruction before argument that operation of car at speed greater than 15 miles per hour was violation of ordinance should have been given, where ordinance was valid.

13. Refusal of proper request before argument, not assuming any fact which was not in evidence, is reversible error, though matter was covered in general charge of court.

14. In action for death of motorman resulting from collision between electric car and motor truck trailer, requested instruction that truck driver, unless he had actual knowledge to the contrary, had a right to assume that electric car was moving not over 15 miles per hour as required by ordinance *held* properly refused as ignoring principle of ordinary care by driver in ascertaining speed of street car.

15. In action for death of motorman resulting from collision between electric car and trailer attached to truck, plaintiff's request to charge, intimating that recovery could be had for burns to decedent after collision, though not proximately and directly caused by defendant's negligence, *held* erroneous.

16. In action for death of motorman resulting from collision between electric car and trailer attached to truck, plaintiff's request to charge, leaving to jury question whether ordinance regulating speed of electric cars was reasonable in its limitation, *held* erroneous.

17. In action for death of motorman resulting from collision between electric car and trailer attached to truck, charge that decedent's failure to sound whistle at crossing would not defeat recovery, if truck driver saw car in time to have avoided collision, *held* erroneous, as ignoring principle of ordinary care by driver in operating truck.

18. Charge defining burden of proof as proof necessary to establish affirmative claim and incline the minds of jury towards notion that claim is true *held* subject to criticism.

19. Burden is on plaintiff to prove each material fact in controversy necessary to his right of recovery by preponderance of evidence; that is, by greater weight of evidence.

20. Charge defining negligence as an act that should not be done or omission to do required act *held* erroneous; "negligence" being want of ordinary care, which is that which persons of ordinary care and prudence are accustomed to exercise under same or similar circumstances.

21. In action for death of motorman, resulting from collision between electric car and truck, charge to allow recovery if "anybody's fault" was proximate cause of motorman's death and "he did not contribute to that cause," *held* inaccurate and misleading.

22. In action for death of motorman resulting from collision between electric car and trailer attached to truck, charge that the defendant owning and operating the truck was liable if driver operated truck without ordinary care and proximately caused motorman's death, and accident was not motorman's own "fault," *held* incorrect in using word "fault" as equivalent of negligence and as failing to indicate clearly that before plaintiff could recover decedent must be free from negligence which either directly contributed to produce or was the proximate cause of his death, and as not limiting truck driver's negligence to allegations in pleadings.

23. In action for death of motorman resulting from collision between electric car and trailer attached to truck, charge that measure of damages was decedent's life expectancy, considered with reference to earning power and ratio of earning power to amount used for benefit of family, *held* prejudicial error, as failing to consider fact that some of probable earnings may cover period in the future, the present value of which would be less than future value.

24. In action for death of motorman resulting from collision between electric car and trailer attached to truck, measure of damages is pecuniary loss sustained by beneficiaries.

25. In action for death of motorman, resulting from collision of electric car with trailer attached to truck owned by a defendant, and used for carrying freight under contract with defendant common carrier, based on theory that defendant owning and operating truck was liable for acts of driver, his servant, and that defendant carrier was liable for performance of nondelegable duty in carriage of freight, court did not err in refusing to require plaintiff to elect between such defendants.

(Decided October 25, 1926.)

ERROR: Court of Appeals for Lucas county.

*Messrs. Fraser, Hiett, Wall & Effler,* for plaintiffs in error.

*Mr. C. A. Thatcher, Mr. R. D. Logan, Mr. Chester A. Meck, Mr. George W. Dougherty,* and *Messrs. Tracy, Chapman & Welles,* for defendants in error.

WILLIAMS, J. Iva E. Callahan, administratrix of the estate of Daniel B. Callahan, deceased, as plaintiff, brought an action against the Liberty Highway Company, Roscoe C. Griffith, and the Detroit, Monroe & Toledo Shore Line Railway Company, as defendants, to recover damages for the wrongful death of her husband. The jury returned a verdict in favor of the plaintiff as against the Liberty Highway Company and Roscoe C. Griffith for $18,500, but, on the issue joined between plaintiff and the railway company, found in favor of the latter. This proceeding in error is brought by the Liberty Highway Company, seeking a reversal of the judgment against it, and Roscoe C.

Griffith and Iva E. Callahan, as said administratrix, have each separately filed a cross-petition in error; the former seeking a reversal of the judgment against him, and the latter seeking a reversal of the judgment in favor of the railway company.

The Detroit, Monroe & Toledo Shore Line Railway Company operates an electric railway line between the cities of Detroit and Toledo, which passes through the city of Wyandotte, Mich. The Liberty Highway Company is a corporation engaged in the transportation of freight by motor truck between the cities of Toledo and Detroit. Plaintiff's decedent was a motorman on one of the cars of the railway company, and, while operating a southbound car through the city of Wyandotte, shortly after 6 o'clock on the evening of December 3, 1924, his car came in collision with the trailer drawn by a motor truck driven in the direction of Toledo by one Harry Culver, an agent and employee of the defendant Roscoe C. Griffith. The collision occurred at the intersection of the railway line and a public street known as Ford avenue (also called North Line road), which is a paved street and part of one of the commonly traveled highways between Detroit and Toledo. At the point of the collision the tracks of the railway company are built upon a private right of way, and the street and railway tracks cross each other almost at right angles. The electric car struck the rear end of the trailer, which was loaded, in part at least, with barrels of turpentine. A part of the inflammable cargo was injected into the car and was later ignited, supposedly by a fuse, the flame of which came in proximity to the turpentine. Plaintiff's decedent and four passengers were killed.

Roscoe C. Griffith was operating the truck, which he owned, and the trailer, which he had rented from the Liberty Highway Company at a cost of $7 per day, to give him more capacity in transporting freight between Detroit and Toledo, under an arrangement with the Liberty Highway Company by which he was to receive 68 per cent. of the charge for freightage and the Liberty Highway Company receive 32. The charges on freight hauled by Griffith were collected by the Liberty Highway Company, which solicited the business and maintained freight docks, where, if the shipments were small, the freight was transferred. Large shipments were commonly delivered direct to their destination.

The contention is made by the Liberty Highway Company that the court should have directed a verdict in its favor at the conclusion of all the evidence, on the theory that Roscoe C. Griffith was not its agent or employee, that it and Griffith were not engaged in a joint enterprise, but that Griffith was an independent contractor. The trial judge improperly restricted the examination of the defendant Griffith with reference to his arrangement with the Liberty Highway Company, and would not permit him to state how long he had been operating a truck in connection with that company. For this reason the full relations between Roscoe C. Griffith and the Liberty Highway Company were not brought out. There is evidence, however, tending to show that the Liberty Highway Company was a common carrier of freight and made the arrangement with Griffith to assist it in performing its public duty as a common carrier. We believe the correct rule to be that a corporation, which is en-

gaged as a common carrier of freight by motor truck, and holds itself out as such to the public, cannot delegate the carrying of the goods upon the public highway by truck to a third party so as to relieve itself from liability for negligent acts committed in the performance of its duties as a common carrier under its charter. Public policy requires that a corporation chartered to perform the public duties of a common carrier should not be permitted to contract with parties who may be irresponsible for the performance of a part of its duties under the charter, and thus avoid responsibility for the negligent performance thereof. The duties of the corporation so chartered are nondelegable, and it is answerable for the negligent acts of persons to whom it intrusts the performance of a part of its duties, if such acts are done by them in the performance of such duties and while acting within the scope of the agreement for carriage. For the reasons indicated, we think that the Liberty Highway Company was not entitled to a directed verdict. *Peters* v. *St. L. & San Francisco Rd. Co.,* 150 Mo. App., 721, 131 S. W., 917. For a discussion of this question, see 28 A. L. R., 190, pt. III, Section 24.

We shall not enter into a discussion of the question of agency, or joint enterprise, or joint adventure, as a basis of liability, for upon a retrial of the case the facts brought out with reference to the arrangement may be somewhat different.

Plaintiff below contended that, under Section 4825 of the Compiled Laws of Michigan 1915, the owner of a motor vehicle was liable for injury occasioned by the negligent operation thereof while in the hands of another, and that the trailer owned

by the Liberty Highway Company was a motor vehicle within the terms of Section 4797, Compiled Laws of Michigan 1915, which provides that the term "motor vehicle" shall include all vehicles propelled by any power other than muscular power. We think the contention of the plaintiff was not tenable. The trailer was not a motor vehicle within the meaning of those sections.

It is claimed that the court erred in permitting evidence as to the validity of the ordinance fixing the speed of electric cars through the corporate limits of Wyandotte at not exceeding 15 miles per hour. The question of the reasonableness of the ordinance was one for the court. The court would have power to hear evidence to determine whether or not the ordinance was void because of the unreasonableness of its limitation as to speed, and the court would not be justified in holding it void unless the presumption of its reasonableness was overcome by clear and convincing evidence. *Toledo, Columbus & Ohio River Rd. Co.* v. *Miller,* 108 Ohio St., 388, 140 N. E., 617. There would be no reversible error, if the court heard the evidence relating to the reasonableness of the ordinance in the presence of the jury, unless the matter admitted in evidence was of a prejudicial character. We believe, however, that the better practice is to hear evidence which relates exclusively to that question in the absence of the jury. The ordinance was presumed to be valid, and the proof offered did not overcome the presumption. A limitation of speed to 15 miles per hour through a municipal corporation has been held valid. *Blancke, Adm'r.,* v. *New York Central Rd. Co.,* 103 Ohio St., 178, 133 N. E., 484. It should be said in passing that under

the law of Michigan the violation of a city ordinance as to speed is not negligence *per se*.

It is also claimed that the court erred in permitting the following testimony to be read from the deposition of a police officer named Stephan Lybik:

"Q. Did you meet a young man named Harry Culver that night? A. I did.

"Q. Did you talk with him? A. Yes, sir; on the way coming to the station; I brought him to the station. That is the first—I didn't when I got there.

"Q. Who did he say he was? A. He told me he was driving a truck for this company, and I asked him his name, and he told me.

"Q. What did he say? A. He said his name was Culver, and on the way in I said, 'What is the matter, couldn't you see the car coming?' 'Why,' he said, 'I see it, but I thought I could make it.'"

This evidence could only have been admissible upon one of two theories: First, that it was an admission of an agent of one of the defendants, made while acting within the scope of his authority, and while engaged in the transaction regarding which the admission was made; second, that the statement made was a part of the *res gestæ*.

The statements were made by the driver long after he had ceased to operate the truck, and it is clear from the evidence that at the time he made them he was not acting within the scope of his authority as such driver, and that the transaction regarding which they were made had ended. The statements were not, therefore, admissible as the admissions of an agent of one of the defendants.

It is fundamental that statements which are so

identified with a transaction as to constitute verbal acts are admissible as a part of the *res gestæ,* but to make them admissible the statements must be contemporaneous with the transaction which they explain. The word "contemporaneous," however, should not be limited to its strict meaning, but its limits should be determined rather by "the causal, logical, or psychological relation of such exclamations [or statements] with the primary facts in controversy." *State* v. *Lasecki,* 90 Ohio St., 10, 106 N. E., 660, L. R. A., 1915E, 202, Ann. Cas., 1916C, 1182. The statements in question were made long after the transaction had taken place, while the police officer was taking the driver to the police station, and were so remote from the main transaction that they could not be said to be so contemporaneous with it as to constitute verbal acts.

The statements of the driver were therefore incompetent, and their admission in evidence was prejudicial error.

The Liberty Highway Company, by request No. 7, and Roscoe C. Griffith, by request No. 13, in substance asked the court to instruct the jury that the operation of an electric car at a speed greater than 15 miles per hour was a violation of the ordinance. The ordinance being valid, they were entitled to have such a request given before argument, and, if the request did not assume any fact of which there was no evidence, to refuse to give it before argument would constitute reversible error, even though the matter was covered in the general charge of the court. *Cleveland & Eylria Elec. Rd. Co.* v. *Hawkins,* 64 Ohio St., 391, 394, 60 N. E., 558; *Chesrown* v. *Bevier,* 101 Ohio St., 282, 128 N. E., 94; *Payne, Dir. Gen.,* v. *Vance,* 103 Ohio St.,

59, 133 N. E., 85; *Rogers* v. *Ziegler,* 21 Ohio App., 186, 152 N. E., 781.

It is claimed that the court erred in refusing to give the Liberty Highway Company's request No. 6 and Roscoe C. Griffith's request No. 11, which involve the principle that unless the truck driver as he approached the crossing had actual knowledge to the contrary he had a right to assume that the interurban car was moving not to exceed 15 miles per hour; or, in other words, that the ordinance was being obeyed. We think these instructions ignored the principle of ordinary care. In other words, the driver would not have a right to act upon his actual knowledge if he might have discovered, by the exercise of ordinary care, that the electric car was traveling at a speed in excess of 15 miles per hour.

Plaintiff's requests to charge Nos. 3, 4, and 5 are clearly erroneous, in that the jury might be led to believe that the plaintiff might recover for injuries to the decedent for burns sustained by the decedent after the collision, even though the burns were not proximately and directly caused by the negligence of the defendants.

The court erred in giving plaintiff's request No. 6 to the jury for the reason that it left to the jury the question whether or not the ordinance as to speed was reasonable in its limitation.

The court gave plaintiff's request to charge No. 9, which reads as follows:

"The jury is instructed, if you find from the evidence that Culver, the driver of the truck in question, saw the electric car operated by decedent approaching the road crossing in ample time to have checked the speed of his truck or to have

turned aside and not operated the same over the railroad track, that, under such circumstances, the fact as to whether the decedent did or did not whistle for said crossing should not be considered by you in this case, and, even if the said decedent did not sound the whistle under such circumstances, his conduct in that respect would not be a defense in this action to any of the defendants herein.''

We think it was error to give this request to charge, for the reason that it ignored the principle of ordinary care. The railway company would not be excused from performing its duty as to whistling as it approached the crossing, unless the driver of the truck saw the approach of the electric car in time to check the speed of his truck, or turn it aside, and not operate the same over the railroad track, by the exercise of ordinary care. Counsel for plaintiff cite language used in the course of the opinion in the case of *Pennsylvania Rd. Co.* v. *Lindahl, Adm'r.,* 111 Ohio St., 502, 506, 507, 146 N. E., 71, to sustain their position. We think the language used by the judge in that opinion was not intended to include all the elements of a driver's right to recover under such circumstances, and we cannot construe it as meaning that the element of ordinary care could be ignored by a trial court in charging the law governing the rights of parties at a railroad crossing.

With reference to the burden of proof, the court charged the jury as follows:

''The burden of proof of the nonadmitted things rests upon the plaintiff. By burden of proof is meant the duty to furnish some evidence which has some value as proof, upon each affirmative obligation. The amount of proof necessary to

establish an affirmative claim is enough to incline the minds of the jury toward the notion that that claim is true. It does not require a great weight or strictness of proof, but just enough to incline the minds of the jury in that direction."

We think this charge of the court is subject to criticism. In Ohio the rule is well established that the burden is upon the plaintiff to prove each material fact in controversy necessary to his right to recover by a preponderance of the evidence; that is to say, by the greater weight of the evidence. We think what the court gave was not the equivalent of the settled rule.

The court also charged the jury as follows:

"Negligence in the sense of a civil law suit is either an act that should not be done, or omission to do an act that ought to be done. It does not mean any vicious attempt, although it might be that under some circumstances; it means simply the omission to do or the inadvertent, thoughtless doing of a thing which ought not to be done; and, if in the doing of something that ought not to be done, a person gets into trouble, he cannot claim anything for his trouble, and if that act of his is the proximate or immediate cause of his difficulty."

Properly defined, negligence is the want of ordinary care or failure to exercise ordinary care, and ordinary care is that care which persons of ordinary care and prudence are accustomed to exercise under the same or similar circumstances. The definition of negligence given was clearly erroneous.

The court also charged the jury as follows:

"Now part of these people are corporations. The corporations are entitled to the same consideration at your hands as individuals. It is a question

only of right and wrong, only of the truth, you
will fairly consider every one's right with that one
thing in mind, the truth of the situation, whose
fault it is that Mr. Callahan is not here, and, if
you find that anybody's fault was the proximate
or immediate cause of his death, and that he did
not contribute to that cause, then you will find for
the plaintiff and estimate the damages according to
the rule that I have given you, as nearly as it is
possible for you to do.''

This language was inaccurate, in that it might
include a fault which did not amount to negligence,
and in that it stated that, if "anybody's fault was
the proximate or immediate cause of" decedent's
death, and that decedent did not contribute to that
cause, plaintiff might recover.  This part of the
charge was inaccurate, indefinite, and mislead-
ing.

The court charged, with reference to contribu-
tory negligence, as follows:

"As between the plaintiff and Mr. Roscoe C.
Griffith, I will call your attention to this, in ad-
dition to what I have said in the specific instruc-
tions.  If the driver of the truck so managed the
same without exercising ordinary care that his act
became the proximate cause of Mr. Callahan's
death, and the accident which caused his death was
not Mr. Callahan's own fault, Mr. Griffith is liable.''

This part of the charge was incorrect, if not
misleading, in that it improperly uses the word
"fault" as the equivalent of negligence, and fails
to indicate clearly that before plaintiff can re-
cover decedent must be free from negligence which
either directly contributed to produce or was the
proximate cause of decedent's death.  It is also

inaccurate in that it failed to limit the negligent acts of the truck driver to those alleged in the pleadings.

There are other inaccuracies in other language employed in the charge, which we think are apparent upon examination.

With reference to the measure of damages, the court instructed the jury as follows:

"The rule of damages will be the length of time that Mr. Callahan would probably have lived, considered with reference to the amount of earnings which he was capable of making and the probable amount or probable ratio of that earning that he would use for the benefit of his family, exclusive of his own living and expenses."

And, again, he instructed them:

"You are confined to a calculation after you find for the plaintiff, if you do find for her, of what amount, as I said, of his earnings that he was capable of making, and the probable time of his future life if he had not been killed, and the ratio of that earning which would have been used for family purposes aside from his own expenses."

The measure of damages in such cases is the pecuniary loss sustained by the beneficiaries. *Paragon Refining Co.* v. *Higbea, Adm'r.,* 22 Ohio App., 440, 153 N. E., 860. The instructions as given by the court are probably improper for several reasons, but certainly for the reason that the rule enunciated fails to take into consideration the fact that some of the probable earnings of the decedent might cover a period in the future. In other words, if the jury had found that Mr. Callahan's expectancy of life extended beyond the time of the trial, it would not be proper to allow him out of future

earnings such amount as he would probably use for the benefit of his family, exclusive of his own living expense, because the present worth of a sum of money to be received in the future would be less than that sum. The giving of these instructions as to the measure of damages constituted prejudicial error.

It is claimed that the court erred in refusing to require an election at the close of all the evidence. We find no error prejudicial to the plaintiff, which would require the reversal of the judgment rendered in favor of the railway company, and therefore the question of election as between that company and the other defendants could not arise upon a retrial. As between the defendants the Liberty Highway Company and Roscoe C. Griffith, we see no reason why they cannot be joined, and why their tort, if one was committed, might not be a joint tort. It is claimed that the principle announced in *French, Adm'r.,* v. *Central Construction Co.,* 76 Ohio St., 509, 81 N. E., 751, 12 L. R. A., (N. S.), 669, applies. That case holds simply that a master and servant cannot be sued jointly in an action for the negligent act of the servant committed in the absence of the master, and without his express direction, as the only liability which could exist against the master would arise out of the doctrine of *respondeat superior.* As between the defendants the Liberty Highway Company and George C. Griffith, it may be said that neither was present at the time the alleged negligent act was committed, and Griffith's liability existed, if at all, upon the theory that he was the master, and the driver of the truck was the servant; and the Liberty Highway Company's liability arose, if at all, because it con-

tracted with Griffith to perform for it a non-delegable duty resting upon it as a common carrier. As between those defendants, there was no error in not requiring an election.

For the reasons indicated, the judgment in favor of the railway company will be affirmed, and the judgment in favor of the plaintiff against the defendants, the Liberty Highway Company and Roscoe C. Griffith, will be reversed, and the cause as to them remanded for a new trial.

*Judgment affirmed in part and reversed in part.*

RICHARDS and YOUNG, JJ., concur.