## STICKEL v ERIE MOTOR FREIGHT, Inc

Ohio Appeals, 6th Dist, Lucas Co ·

Decided May 18, 1936

Fraser, Effler, Shumaker & Winn, Toledo, for appellant.

Price & Price; Denman, Miller & Beatty, Toledo, and Roi O. Becker, Toledo, for appellee.

### OPINION

By LLOYD, J.

In the petition filed in the Court of Common Pleas the appellant, Mattie Stickel, alleges that the appellee, Erie Motor Freight, Inc., is a public utility corporation organized and existing under and by virtue of the laws of Michigan, engaged in the business of hauling and transporting in interstate commerce merchandise and freight, by means of trucks and trailers operated upon the public highways of Ohio and other states, and that it is qualified to do business in Ohio. The facts so alleged are admitted· in the answer of the appellee.

Appellant sought to recover of appellee $50.000 for personal injuries alleged to have been proximately caused by the negligence of appellee in operating a truck and trailer driven by one Dewey Shappell, its alleged agent, servant and employee acting within the scope of his employment. These facts are denied.

The trial in the Court of Common Pleas resulted in a verdict for appellant in the sum of $30,000. Motion for judgment notwithstanding the verdict, as is now permitted by §11601, GC, as amended September 2, 1935, was thereupon filed by appellee, as well as a motion for a new trial. The trial court finding as a matter of law that Shappell was an independent · contractor the motion for judgment was granted and the motion for a new trial overruled. From this judgment appellant appeals, stating in his brief that the sole question for consideration is:

"Was Dewey Shappell, the driver of the truck and trailer, an agent of the defendant (appellee) or was he an independent contractor?"

The only evidence in the record as to the relationship existing between these two was the testimony of Louis Hoffman, secretary and treasurer of appellee, and that of the driver Shappell, in conjunction with certain exhibits. The testimony of Hoffman is not as frankly helpful as we would expect to find it, being not unlike the testimony of a witness appearing in a· bill of exceptions examined by this court not so very long ago, who, in answer to a question on cross-examination, said: "I ain't got no memory for what you want. to know."

Hoffman testified that he and two brothers constituted the corporation; that he did not know whether the company owned any trucks or trailers on August 19, 1934, the date of the injury of which appellant complains; did not know that the name of the company appeared on both the truck and trailer of Shappell, or that the Ohio Public Utilities Commission certificate number issued to his company appeared thereon; in fact, he seemed to have· no particular knowledge of anything concerning the conduct of the business of the company except that Shappell owned the truck

and trailer operated by him, and received $4 per ton of each load of freight hauled, and that the appellee, a corporation organized under the laws of Michigan, had been in business in Ohio for three and a half or four years and had a certificate from the Public Utilities Commission thereof "to use the public highways."

Shappell testified in substance that he had been hauling freight for the appellee for "about a year and a half" and that during that time he owned the equipment used by him for that purpose; that by direction of Louis Hoffman the inscription, "Erie Motor Freight, Inc.," was placed on both sides of his truck and was also painted on both sides of the trailer used by him on August 19, 1934, and that as so directed there was also "painted on both sides of the tractor and both sides of the trailer," immediately under the name of appellee, "PUCO No. 3688," the certificate number granted to appellee by the Ohio Public Utilities Commission, as was also appellee's Public Service Commission number of Indiana; and the tonnage capacity of the truck and trailer.

Shappell himself had not applied for and had never had any permit or certificate from the Public Utilities Commission, nor had he any personal liability or cargo insurance. On Saturday, August 18, he received from appellee at Chicago a 16,000 pound load of chemicals which Louis Hoffman told him "to put on," together with copies of waybills or bills of lading therefor, prepared on printed forms of appellee, describing the cargo and naming the consignor, consignee and places of delivery. He also signed receipts describing its character and stating where and to whom it was to be delivered. He says that he had nothing to do with the collection of the freight charges; and that after their collection by appellee he received from it 65% thereof as his compensation.

He says a description of his truck and trailer was sent to the Public Utilities Commission at Columbus and that his name was included in the list of "haulers" for appellee, furnished to the commission.

The foregoing is substantially all of the evidence relating to the arrangement pursuant to which Shappell was transporting freight for appellee. Ordinarily such facts alone would not be sufficient to constitute a relation of master and servant or principal and agent. Admittedly, appellee by authority of its corporate character was a common carrier of freight, and as distinguished from an individual, could engage in that business only because empowered thereby so to do. That it might conduct its business in Ohio appellee was required to and did comply not only with the provisions of §614-99, GC, but also with the other statutory provisions relative to motor transportation companies, and obtained the certificate required thereby from the Public Utilities Commission, without which it was not privileged to use the highways of the state in the transportation of its freight and merchandise; and in order that Shappell, who had no individual permit or certificate, might transport its freight and merchandise in and through Ohio, appellee directed and permitted him to use its certificate number for the furtherance of its corporate purposes, without which it could not lawfully use the highways of Ohio in the conduct of its business.

Our opinion is that it could not thus delegate the exercise of the special privileges granted to it to use the public highways of Ohio and thereby avoid liability to those lawfully upon the highway for injuries proximately caused by the negligence of Shappell. Appellee is bound by the wrongful acts of Shappell while exercising with its assent the special privilege thus granted to it.

We are told that the Supreme Court has barred this conclusion by its holding in the case of **Leonard v Kreider, 128 Oh St, 267,** 190 NE, 634, but as we read the opinion the facts therein stated are totally unlike those in the instant case. There, Leonard, an individual, was doing business under the name of The Buffalo Fast Freight Company. He owned no motor equipment and styled himself a motor freight broker. It was his practice to solicit freight of Akron shippers for carriage to Buffalo, and whenever he procured a shipment to call a truck owner, who, upon receipt of the information, went to the place of business of the shipper for the load, chose his route to Buffalo, and received as compensation from Leonard a fixed price per mile. Leonard did not procure a certificate from the Public Utilities Commission as required by §§614-2 **and 614-84 to 614-120, GC,** for a "motor transportation company," nor did he furnish a bond or insurance policy as required by §614-99, GC; nor does the Supreme Court say he should have done these things, or that he was "a motor transportation company" and as such subject to those statutes. It merely holds that §614-99, GC, does not abrogate any rule of law as to independent contractors.

The syllabus must be read, we assume, in the light of the facts expressed in the opinion, wherein it is stated that the contention made was that "every 'transportation company' is made primarily liable to the public for all injuries caused by trucks transporting freight for it unless a proper bond has been executed or an insurance policy furnished. It was pointed out that the Legislature exacted a bond or insurance policy from 'transportation companies' but not from truck owners or operators, and therefore it must have been intended to hold such companies liable for all injuries occasioned by trucks carrying freight for them, because otherwise it would be possible to operate freight trucks without the protection of a bond or insurance policy so long as the owner or operator is not a 'transportation company'."

The Supreme Court, disagreeing with these views, said:

"The important problem presented * * * seems to be one that should be solved by means of clear and definite legislative enactment rather than by questionable judicial inference."

Appellee being a "motor transportation company" exercising its corporate powers as a common carrier of freight under the public utility statutes of Ohio, it does not seem to us that this decision of the Supreme Court is at variance with our conclusion, nor, as applied to the facts therein, in conflict with the decision of this court in **Liberty Highway Co. v Callahan**, 24 Oh Ap, 374, (4 Abs 830), 157 NE, 708, followed as a precedent in **Interstate Motor Freight Corp. v Beecher**, 37 Oh Ap, 23, 174 NE, 27. The conclusion reached in these, and in the instant case, in no way interferes with or destroys any of the interstate privileges enjoyed by such corporations. The duties, purposes and obligations of motor freight companies, such as the appellee, are quasi-public in nature and the operation of trucks and trailers on the public highways greatly increases the hazard of driving thereon by the many others entitled to use them. As said in the syllabus in **Motor Transport & Truck Co. v Public Utilities Commission**, 125 Oh St, 374, 181 NE, 665:

"Streets and highways belong to the public, and are primarily for the use of the public in the ordinary way. Their use for the purpose of gain by common carriers is special and extraordinary and subject to regulation by duly constituted authority."

Principles of law applicable thereto should expand to cover newly created and changing conditions and necessities. It would seem that public policy requires it and that the general public affected by the increased hazards has a right to expect it, and, as we read it, this need and propriety of application are recognized in §428, Restatement of the Law of Torts of the American Law Institute.

Incidentally, it was argued by appellant that the arrangement between appellee and Shappell created a joint adventure, but this issue was not pleaded nor was the action tried on that theory and that contention, therefore, has not been considered by this court.

This court has considered only the error of which appellant complains in her brief, and finding that the trial court erred to the prejudice of appellant in granting the motion of appellee for judgment notwithstanding the verdict, its judgment is reversed and the cause is remanded to that court with directions to vacate the ruling made, and to hear and decide the motion of appellee for a new trial. **Thompson v Rutledge**, 32 Oh Ap, 537, 168 NE, 547, (7 Abs 461).

Judgment reversed and cause remanded.

OVERMYER and CARPENTER, JJ, concur.