AMERICAN TRANSIT LINES,

v.

Ralph R. SMITH.

No. 13026.

United States Court of Appeals.
Sixth Circuit.

July 2, 1957.

S. Burns Weston, Mark O'Neill, Louis Paisley, Cleveland, Ohio, on the brief, McConnell, Blackmore, Cory, Burke & Kundtz, Cleveland, Ohio, of counsel, for appellant.

Lawrence E. Stewart, and W. Guy Hardy, Cleveland, Ohio, McDonald, Hopkins, Hood & Hardy, Cleveland, Ohio, of counsel, for appellee.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a judgment of the District Court in favor of appellee, plaintiff in a personal injury case which was heard by the court without a jury.[1] Plaintiff was injured on June 22, 1951, while operating his automobile north on West 117th Street in Cleveland, Ohio. He had stopped for a red light at the intersection of West 117th Street with Cooley Avenue. At that intersection one Nick Medovic was operating a tractor trailer also in a northerly direction and he struck plaintiff's automobile from the rear, inflicting serious personal injury. The negligence of Medovic was conceded by defendant in the trial. The District Court entered judgment in favor of plaintiff.

The sole question is whether the trial court erred in ruling that Medovic was operating the tractor trailer under defendant's control and direction and that the outfit involved in the collision was being operated for American Transit Lines at the time the accident occurred.

The tractor trailer, which was owned by Medovic, had on each door decals, which were doubly impervious due to the fact that they were varnished. The decals carried the name American Transit Lines and the ICC and PUCO permit numbers issued defendant for interstate operation and for operation in Ohio, Indiana, Michigan and other states. Medovic frequently hauled for defendant, including some three trips a month between Hammond, Indiana, and Cleveland, Ohio, where defendant is located. He also, with defendant's permission, hauled for others. On the day of the accident he had just returned from Hammond, Indiana, to Cleveland, Ohio, having hauled a load for defendant. His truck was empty. At the time of the collision the tractor trailer was being operated in the general direction of defendant's yard and Medovic had in his possession a delivery receipt and manifest to be delivered to defendant. He also had a receipt to be delivered to Cushman's, another concern for which he had previously hauled a load from Cleveland to Racine, Wisconsin. Medovic said that he did not have any other load for defendant, explaining "No, I hadn't contacted American Transit that early in the morning yet."

---

1. The parties will be denominated as in the court below.

The base of operations to which Medovic customarily returned the tractor trailer was defendant's yard or a lot near his home.

Medovic testified that he was operating under a "trip lease" between himself and defendant covering only the one-way trip from Hammond, Indiana, to the Electro Motive Division of General Motors Corporation, hereinafter called Electro Motive, Cleveland, Ohio. Exhibit C, introduced in evidence, was not the trip lease, if any, actually employed covering this trip. Appellant's counsel said that Exhibit C "represented" the trip lease. As to defendant it was executed "American Transit Lines by E. Sylvester." It was not signed by Medovic, but was signed "N. Medovic by E. S." Defendant admits that "E. S." stands for E. Sylvester, who signed for defendant. The trip lease is claimed to limit defendant's liability to the time actually involved in a single trip contracted for between defendant and Medovic "from the point of origin to the destination indicated," that is, from Hammond, Indiana, to Electro Motive, Cleveland, Ohio. Early on the day of the accident Medovic had delivered defendant's load to Electro Motive and had been given the delivery receipt, which he was required to turn in to defendant. Defendant claimed that it was not liable for the accident upon the ground that its obligation terminated with the delivery of the load to Electro Motive, which delivery was shortly prior to the collision.

At the time of the accident plaintiff was told by Medovic to get in touch with defendant and that defendant would contact him. A Mr. Tracy, a representative of defendant, did in fact contact plaintiff and called upon him some six times. Tracy advised plaintiff not to sue American Transit Lines because it would be a waste of money.

The trial court found as a fact that by the agreement between defendant and Medovic the tractor trailer was under the direction and control of defendant at all times and that the driver was not permitted to operate the tractor trailer outfit for any other person, firm, or corpora-

tion without the express authorization of defendant. The court's conclusion of law was that the tractor trailer outfit involved in the collision was being operated for American Transit Lines at the time of the collision.

The findings of fact of the District Court are not to be set aside unless clearly erroneous, Federal Rules of Civil Procedure rule 52, 28 U.S.C., and we must give due regard to the opportunity of the trial court to judge of the credibility of the witnesses. If supported by the record the findings are binding on appeal. Reynolds Metals Co. v. Skinner, 6 Cir., 166 F.2d 66, certiorari denied 334 U.S. 858, 68 S.Ct. 1528, 92 L.Ed. 1778.

These findings are supported by the record. Medovic was an evasive witness, as indicated by the District Court. However, he testified in the affirmative in answer to a question whether in his deposition he had not stated that if he hauled for some other company than defendant he always first got defendant's approval for such haul. He stated in effect at the trial that if defendant did not have a load for Medovic and Medovic had secured a load from someone else defendant would authorize him to "go ahead." At the trial Medovic qualified his testimony by stating that a lot of times he "didn't even check with them." The District Court evidently appraised the credibility of this testimony in light of Medovic's manifest interest and concluded that the driver's original story was true. The fact that defendant had exclusive control of Medovic's vehicle and services when and if his services were needed, was evidence of continual control and supports the finding of the District Court. Under the well-established rule the existence of control is proved, not only by its exercise, but also by the right of exercise.

Defendant put on no other witnesses except Medovic and his testimony was not denied. His original view of his relationship to defendant was that he was American's "regular man." This view was recognized by defendant's negotia-

tions after the accident. Medovic told plaintiff to contact American or Markel, to get in touch with "our insurance company." This was followed by repeated negotiations between Markel and plaintiff. These facts also, unexplained and undisputed, are evidence of a continuing relationship between Medovic and defendant covering the time of the accident, rather than the ephemeral relationship created by a trip lease.

Defendant's contentions are based mainly upon the assumed existence of a one-way trip lease between Medovic and defendant. The cases on which defendant relies most strongly are one-way trip lease cases: Costello v. Smith, 2 Cir., 179 F.2d 715, 16 A.L.R.2d 954; Eckard v. Johnson, 235 N.C. 538, 70 S.E. 2d 488; Gallagher's Estate v. Battle, 209 Md. 592, 122 A.2d 93; Hall v. Gallagher, Del., 125 A.2d 507.

In Costello v. Smith, supra, and Eckard v. Johnson, supra, the trip lease involved contained specific provisions to the effect that liability should terminate upon completion of delivery. The alleged trip lease presented in evidence here contains no such provision.

But no valid trip lease was shown to cover the trip from Hammond to Cleveland. The purported trip lease introduced as being the same type of trip lease as that under which Medovic operated was signed by the same party for both parties. E. Sylvester did not testify, nor did Medovic testify that "E. S." was his agent. The lease was a lease made by defendant's agent with defendant's agent. There being no covering trip lease the District Court correctly relied upon the arrangement and understanding between the parties which evidenced a continued control and direction of Medovic's operations by defendant. The cited one-way trip lease cases do not apply.

█ Whether or not there was a written lease we think the judgment of the District Court was correct. Under its PUC permit to operate in Ohio defendant carried liability insurance required by the Ohio Code, which compels a private motor carrier to deposit with the PUCO a liability insurance certificate, policy, or bond "to protect the public." Revised Code, § 4923.08. This liability insurance policy must "be liberally construed so as to attain the legislative intent to protect the general public from loss by injury or death caused by the negligence of the insured, his agent, his servant or his independent contractor." Wood v. Vona, 147 Ohio St. 91, 68 N.E.2d 80. As defendant was holder of a public franchise, under Restatement of the Law of Torts (Vol. II, Negligence), Section 428, it cannot relieve itself of liability even through the employment of an independent contractor. Defendant concedes that this section is applicable here.

█ It has long been the law of Ohio that the holder of a public franchise cannot, by employing an independent contractor, delegate its duties under the franchise so as to absolve itself from liability. Cf. Richman Bros. Co. v. Miller, 131 Ohio St. 424, 3 N.E.2d 360; Stickel v. Erie Motor Freight, Inc., 54 Ohio App. 74, 6 N.E.2d 15; Liberty Highway Co. v. Callahan, 24 Ohio App. 374, 157 N.E. 708, syllabi 1, 2. The Liberty Highway and Stickel cases specifically hold that the obligation of a motor transportation company is nondelegable, even though the motor transportation company carries on its business through an independent contractor.

Section 428, Negligence, Restatement of the Law of Torts, reads as follows:

"Contractor's Negligence in Doing Work Which Cannot Be Lawfully Done Except Under a Franchise Granted to His Employer.

"An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity."

The section is declared in Comment a to be applicable to public service corpora-

tions which as such, are of franchise, permitted by their franchise to use instrumentalities which are peculiarly dangerous unless carefully operated. The courts, in response to the growing need for public protection on the highways, have held that the tremendous increase in automobile traffic and the use of private motor trucks by certified private carriers to increase their facilities of motor transportation involve an unreasonable risk of harm to others within Section 428. The Supreme Court of Appeals of Virginia recently pointed out that freight trucks monopolize the highways and make them dangerous and declared "it is in the light of their potential destructiveness that a high degree of care is but ordinary care. Boggs v. Plybon, 157 Va. 30, 160 S.E. 77 * * * freight cars which operate along the public highway, intended for the common use of all the people, are "dangerous instruments. Aronovitch v. Ayres, 169 Va. 308, 318, 193 S.E. 524, 526. In Hodges v. Johnson, D.C., 52 F.Supp. 488, the court declared it is a matter of common knowledge that the transportation of freight upon the highways is fraught with great danger to the traveling public. Cf. War Emergency Co-op. Ass'n v. Widenhouse, 4 Cir., 169 F.2d 403, 407, 408.

■ It is also the law of Ohio that the operation of a motor truck under the circumstances of this record is peculiarly dangerous within the meaning of Section 428. In discussing this particular point the court in Stickel v. Erie Motor Transport, Inc., supra, 54 Ohio App. 79, 6 N.E.2d 17, declares:

> "The duties, purposes and obligations of motor freight companies, such as the appellee, are quasi-public in nature and the operation of trucks and trailers on the public highways greatly increases the hazards of driving thereon by the many others entitled to use them."

The court then commented that the law "should expand to cover newly created and changing conditions and necessities. It would seem that public policy requires it and that the general public affected by the increased hazards has a right to expect it, and, as we read it, this need and propriety of application are recognized in Section 428, Restatement of the Law of Torts of the American Law Institute."

In Hodges v. Johnson, supra, the injury for which the action was brought was caused by the negligence of an independent contractor. The court held that the employer of the independent contractor was liable, together with the contractor, under Restatement of the Law of Torts, Section 428. The driver of the truck, employee of the independent contractor, had completed his mission and was returning with an empty truck. The court held that, since under its franchise the franchise holder is responsible for the operation of the truck on this mission, it is absurd to say that the responsibility should attach "while the truck is proceeding on its journey loaded, and should not attach on the return journey while empty." Both the journey and the return journey, the court held, are necessary parts of the same trip and the whole trip was undertaken and was being made under the authority of the franchise. To the same effect see Venuto v. Robinson, 3 Cir., 118 F.2d 679, in which the injury was inflicted by an independent contractor, but the court held the motor carrier liable for negligence under Section 428. Cf. Liberty Highway Co. v. Callahan, supra, syllabi 1, 2; Marriott v. National Mutual Casualty Co., 10 Cir., 195 F.2d 462.

■■ This court takes judicial notice of the fact that in the last 20 years the number of automobiles on the roads has doubled; that the figures of The American Automobile Association for 1955 show that there are 62,053,697 automobiles, including buses and trucks, in the United States. These facts require the inclusion within the rule of Section 428 of cars operated under franchises issued to other concerns for the performance of work which can be done only under a franchise. If the motor carrier cannot delegate its responsibility to an independent contractor for the period of delivering the load, neither can it dele-

gate its responsibility for that part of the trip which necessarily must be made after the load is delivered. It is the motor carrier that has put the entire trip in motion.

In the case here Medovic was compelled to report for assignment before being released for work for others. Therefore Sobolovitz v. Lubric Oil Co., 107 Ohio St. 204, 140 N.E. 634, and Simon v. McCullough Transfer Co., Inc., 155 Ohio St. 104, 98 N.E.2d 19, do not apply. Neither case rules on a question as to the application of Section 428 of the Restatement of the Law of Torts. The Sobolovitz case declared that an inference cannot be erected on an inference. In the McCullough case, while the Costello case, supra, was cited and quoted, the facts are totally different from those presented herein. An independent contractor, who had delivered his last load of coal before a weekend recess, had thereafter visited a beer garden, and some two hours later was involved in an accident. Here Medovic could not, under his arrangements with defendant, contract for loads from other concerns until defendant released him. At the time of the accident he was moving in the general direction of defendant's yard, compelled as a part of the pattern of his work to return to base and to report to defendant.

A situation similar to the instant case in many aspects was presented in Mitchell v. Great Eastern Stages, Inc., 140 Ohio St. 137, 42 N.E.2d 771, 141 A.L.R. 624. Great Eastern had a PUC franchise from the State of Ohio for operating buses over U. S. Route 40. A bus broke down and was being returned to the company repair shop in Cleveland, Ohio, operating on a highway for which the bus company had no franchise, at the time of the accident which was the basis of the action. Great Eastern claimed that, as the bus was not being operated for the carriage of passengers and was not on an authorized route, its movement was not part of the authorized transportation and the company was not liable. The Supreme Court of Ohio held that a certified common carrier had not ceased to operate as such in doing things incidental to the repairing, servicing and housing of its buses. It held that in accomplishing these incidental purposes the common carrier is "as much engaged in the business of common carriage as when actually transporting passengers upon specified routes."

Under this decision the movement of the tractor trailer herein to its base of operation from the spot where it unloaded at Electro Motive is incidental to the housing of the vehicle and is part of the movement of defendant's authorized transportation.

The judgment of the District Court is affirmed.