Wiley Lee BRADEN

v.

Earl B. TURNER, Jr., and Atlantic Truck Lines, Inc.

Civ. A. No. 6016.

United States District Court
E. D. Tennessee, N. D.

March 4, 1968.

**380**

W. B. Lewallen, Clinton, Tenn., and H. Calvin Walter, Walter, Gilbertson & Claiborne, Knoxville, for defendant.

Stuart F. Dye and Erma G. Greenwood, Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

There are two motions for consideration. The first is the motion of Atlantic Truck Lines, Inc., hereafter for convenience called Atlantic, for a judgment notwithstanding the verdict of the jury. The second is that of defendants, Earl B. Turner, Jr. and Atlantic, for a new trial.

In support of the motion for judgment notwithstanding the verdict it is asserted that at the time of the accident out of which the action arose the tractor-trailer unit involved in the accident was neither owned nor operated by Atlantic but was being operated by the defendant, Robert Werner Hancock, (the jury found in favor of Hancock), an independent contractor, by his employee Earl B. Turner, Jr. Hancock also denied in the pre-trial that he was responsible for the negligence of Turner, if any.

It is asserted that on its outbound trip from New York the tractor-trailer was operated on irregular routes under a certificate granted by the Interstate Commerce Commission to Atlantic, but at the time of the occurrence of the accident the tractor-trailer was transporting watermelons, an exempt commodity, and was not subject to the regulations of the ICC.

It is further asserted that no principal-agent or employer-employee relationship existed between Atlantic and either Turner or Hancock to impose vicarious liability upon the defendant, Atlantic.

We are urged in the brief filed in support of the motion to keep in mind the factors that the franchise rights granted by the ICC to Atlantic were over irregular routes for outbound merchandise from New York; that Atlantic had no franchise rights for merchandise inbound to New York or from Marietta, Georgia to Cleveland, Ohio. That at the time of the accident a commodity specifically exempt from ICC regulations was being transported to Cleveland, Ohio. That the fact that ICC requires the truck driver to maintain a proper driving and rest schedule and to keep a log does not alter the fact that the trip that was being made at the time of the occurrence of the accident was not subject to regulations by the ICC.

█ Hancock, the owner of the tractor —some other party owned the trailer— and the original employer of Turner, entered into a lease with Atlantic on the 5th day of October, 1966. This lease was in effect at the time of the accident. It provides in pertinent part that:

"* * * For the duration of this lease OWNER (Hancock) leases Equipment unto CARRIER (Atlantic) for CARRIER'S exclusive possession, con-

trol, use and responsibility. It is understood that Equipment is being leased to CARRIER in order that CARRIER may utilize said Equipment in the transportation of property for hire; that OWNER is to furnish a competent, reliable and physically fit operator or driver together with any necessary helpers to operate said equipment as a part of the consideration hereof. \* \* \* "

The lease further provides that the carrier shall furnish and pay the cost of public liability, property damage and cargo insurance on the equipment while the same is being operated in the service of the carrier and shall keep and maintain said insurance coverage at least in the amounts required by applicable laws and regulations. Carrier may sublease the equipment when permitted by applicable laws and regulations and carrier shall be considered as owner for the purpose of any such subleasing.

The lease recites that the relationship between the carrier and owner shall be that of independent contractor and the employees of one party shall not be considered the employees of the other. Thus, the tractor and the driver, Turner, were leased to Atlantic.

Atlantic paid Hancock 30 cents per loaded mile and 20 cents per empty mile for the truck and $85.00 daily rate to apply on overnight runs only. The truck left Long Island, New York with commercial freight manufactured by Atlantic's parent company for Florida. It was subject to Interstate Commerce regulations and had an ICC identification mark on it. It had permits to operate in Tennessee, Georgia and Florida and presumably in the other States it traversed on the trip. After Turner unloaded his commercial freight in Florida he picked up a half load of watermelons in Coleman, Florida on May 25, 1967. These watermelons were to be delivered to the Kroger Company in Cleveland, Ohio. On May 26, 1967 the full load of watermelons was completed in Georgia. The watermelons were picked up under the direction of Atlantic and were to be delivered to Kroger in accordance with Atlantic's agreement with Kroger. Atlantic received the pay for the freight on the watermelons. The accident occurred on May 26, 1967 in Anderson County, Tennessee between Oliver Springs and Clinton. Turner reported the accident to Atlantic. Atlantic, through its traffic manager, reported the accident to the Interstate Commerce Commission in a written report on June 22, 1967. The written report stated that Earl B. Turner, Jr. was Atlantic's driver. It was also stated in the report that Turner had been employed by Atlantic seven months prior to the accident. Peter Patokis, of Atlantic, was the immediate supervisor of Turner.

Hancock testified that Turner was originally employed by him. The lease and the circumstances under which Turner worked clearly show that Hancock not only leased his tractor to Atlantic but also Turner, the driver. Turner was under the complete control of Atlantic at the time of the accident and, as stated by Atlantic to the ICC, he was in law and in fact the employee of Atlantic. Turner received pay from the commissions received by Hancock from Atlantic for the use of the truck. The fact that the truck was being used on the return trip to haul watermelons, an exempt product under the ICC regulations, would not relieve Atlantic from responsibility for the negligence of Turner.

The language used by the Sixth Circuit on the responsibility of franchise holders to operate trucks over the public highway, in the case of American Transit Lines v. Smith, 246 F.2d 86, at page 90, is pertinent:

"In Hodges v. Johnson, supra, [52 F.Supp. 488,] the injury for which the action was brought was caused by the negligence of an independent contractor. The court held that the employer of the independent contractor was liable, together with the contractor, under Restatement of the Law of Torts, Section 428. The driver of the truck, employee of the independent contractor, had completed his mission and was returning with an empty truck. The

court held that, since under its franchise the franchise holder is responsible for the operation of the truck on this mission, it is absurd to say that the responsibility should attach 'while the truck is proceeding on its journey loaded, and should not attach on the return journey while empty.' Both the journey and the return journey, the court held, are necessary parts of the same trip and the whole trip was undertaken and was being made under the authority of the franchise. To the same effect see Venuto v. Robinson, 3 Cir., 118 F.2d 679, in which the injury was inflicted by an independent contractor, but the court held the motor carrier liable for negligence under Section 428. Cf. Liberty Highway Co. v. Callahan, supra, [24 Ohio App. 374, 157 N.E. 708] syllabi 1, 2; Marriott v. National Mutual Casualty Co., 10 Cir., 195 F.2d 462."

■ Franchise holders are liable for the negligence of the truck driver under the Tennessee law. Carter v. ET & WNC Transportation Company, 35 Tenn.App. 196, 243 S.W.2d 505; ET & WNC Transportation Company v. Virginia Surety Company, 129 F.Supp. 305, 312.

In the case of American Surety Company of New York v. Canal Insurance Company, 157 F.Supp. 386, the Court stated:

"At the time of the accident, Johnson had complete dominion, supervision and control of the leased equipment and the leased driver. The driver and equipment were being used exclusively on the business of Johnson, and the lessor Mrs. Sutherland could not have exercised any dominion or control over them. Johnson directed the routes over which the equipment was to be used, how long the driver could drive at a time, what speeds he should maintain and where he could go; further, Johnson required that the driver maintain a log showing the details of the trip. The equipment bore Johnson's I.C.C. identification devise and was being operated under its I.C.C. franchise. Under these circumstances the leased or hired driver was the agent and servant of the lessee. Brabham v. Southern Asphalt Haulers Inc., 223 S. C. 421, 76 S.E.2d 301; American Fidelity & Cas. Co. of Richmond, Va., v. Zurich General A & L Ins. Co., D.C., 70 F.Supp. 613; I.C.C. Rules and Regulations, Section 207.4; Steffens v. Continental Freight Forwarders Co., 66 Ohio App. 534, 35 N.E.2d 734."

See: Walters v. Dunlap, D.C., 250 F. Supp. 76; 60 C.J.S.—Motor Vehicles—§ 455, page 1166.

In the case of Hodges v. Johnson, D.C., 52 F.Supp. 488, the truck was returning empty to its original starting point at the time of the accident. The owner of the truck was not exercising any authority over the driver at the time of the accident. The Court, in holding the certificated carrier liable, said:

"Undoubtedly, at the time of the accident which is the basis of this action, Johnson, the independent contractor was carrying on an activity which could be lawfully carried on only under a franchise or certificate granted by the Interstate Commerce Commission, a public authority. Jocie had such a franchise, and Johnson did not, and that was the sole reason for the lease agreement, I am also satisfied that this activity involved an unreasonable risk of harm to others. It is a matter of common knowledge that the transportation of freight upon the highways, usually by means of huge trucks and trailers, is fraught with great danger to the traveling public. It has been deemed necessary by the Legislature of this Commonwealth, and probably by the legislatures of all the states in the Union, to enact comprehensive regulatory laws governing the operation of such transportation. And besides, the Congress of the United States has enacted similar laws for the regulation of interstate freight shipments on the highways and has placed all such business under the regulation of the Interstate Commerce Commission. It is well known that one

of the principal purposes, if not the primary purpose, of these regulatory laws is the protection of the traveling public upon the highways."

In the case of Marriott v. National Mutual Cas. Co., 195 F.2d 462, at page 466, the Court said:

" * * * We think that under the terms of the lease S & C had the right to control Womack on the trip to Miami and return, and that it was responsible for injuries to the public unless Womack, as contemplated by Sec. 5 of the lease, was at the time of the injuries hauling freight for others or acting beyond the scope of his employment. Foster v. Commercial Standard Ins. Co., 10 Cir., 121 F.2d 117. Under Kansas law, the right to control an employee fixes the liability of the employer, not the exercise of that right. (Citing cases.)

\* \* \* \* \* \*

"The contention of S & C and the casualty company that upon the return trip Womack was not traveling pursuant to any certificate or permit of S & C, therefore there was no liability, is without merit. S & C registered the Womack truck and trailer with the Kansas Commission and obtained authority to use it in its public carrier business. (Atlantic had a permit to use the truck in Tennessee.) Armed with this authority and its lease of the equipment, it initiated the Miami trip under its general franchise or certificate of convenience. It was under this general franchise or certificate of convenience that the merchandise was being delivered. Womack had no other authority. To permit S & C and its insurer to escape liability because the special authority covering this equipment had expired en route would deprive the public of the very protection which the statute was designed to give. To so hold would exclude liability in cases where equipment not properly registered was used or where the injuries occurred after the expiration of a special authority and in the course of

completing the delivery of the freight or passengers."

See American Fidelity & Cas. Co. v. Johnson, 336 S.W.2d 351 (Court of Appeals of Kentucky).

Atlantic relies upon the case of Costello v. Smith, 179 F.2d 715, 16 A.L.R.2d 954, to support its contention that the negligence of Turner was not chargeable to it because the accident happened at the time he was hauling watermelons and on the return trip. The facts in the *Costello* case are different from those in our case. In the *Costello* case the lease covered only one-way trips. The owner of the truck was free to haul and hauled for whom he pleased on the return trip. It was not a part of the agreement that the truck was to return empty. After the original trip was completed the truck owner was at liberty to obtain another load to transport in any direction for any other carrier. The principle announced in this case is not controlling of the case under consideration.

Another case relied upon by Atlantic is that of Interstate Commerce Commission v. Service Trucking Co., 3 Cir., 186 F.2d 400. That case held that a hauler of eggs was exempt from the requirement of having a certificate of public convenience and necessity when hauling eggs.

Finally, in the case of Lester C. Newton Trucking Company v. United States, D.C., 264 F.Supp. 869, plaintiff filed suit to set aside an order of the Interstate Commerce Commission and to remand the proceedings to the Commission for interpretation or amendment of its certificate of public convenience and necessity to include authority to continue to operate throughout the territory in which it was then operating as a motor carrier of frozen fruits, frozen berries and frozen vegetables. The case of Winter Garden Co. v. United States, D.C., 211 F. Supp. 280, a decision of this Court, was one of the many cases cited. The ruling in that case is not pertinent to the facts involved in the case under consideration.

Atlantic was also responsible for the negligence of Turner under the doctrine of respondeat superior.

For the reasons given and upon the cases cited the motion for judgment notwithstanding the verdict must be overruled.

This brings us to the motion for a new trial, in support of which four separate grounds are urged.

The first two grounds assert that the verdict is excessive and so excessive as to evince passion, prejudice or unaccountable caprice on the part of the jury. The amount of the verdict was $150,000.00.

Plaintiff is a young man 27 years of age and the father of two children. He is a painter by trade and his average weekly wage was from $100.00 to $125.00. He has had one year of high school. The only kind of work he has ever done has required the use of his hands.

On May 26, 1967, the day of the accident, plaintiff met defendant's truck on a curve on the highway when the truck was on the wrong side of the road, according to his testimony, and he tried to dodge it without success. After the tractor part of the tractor-trailer had passed his car and the rear end of the trailer was about to pass, his left arm near the shoulder was cut off by a part of the metal on the trailer at the extreme rear end. Affie Truell, who lived near the scene of the accident, heard the crash and immediately went to the scene. He found that one of the arms of plaintiff had been severed and placed a tourniquet around his shoulder and transported him to the hospital. In the absence of the Good Samaritan Act of Mr. Truell, plaintiff would have died. Upon arrival at the hospital, plaintiff was in severe shock. Blood transfusions were given to him. He was released from the hospital on June 7, 1967. He has not been able to work since the accident. He cannot bathe, shave, dress or tie his shoes without assistance. His special damages to the date of trial, including loss of wages, amounted to around $5,000.00. He has suffered considerable amount of pain. He is using a shrinker device to prepare his arm for a later fitting of a possible artificial limb. His testimony indicated that the pain is so great he cannot wear the shrinker device except for a short time. Dr. Eversall estimated his disability at 50%.

The verdict is on the high side even in this inflationary period.

$100,000.00 verdicts were rendered in the cases of Esso Standard Oil Company v. Lilly, 6 Cir., 286 F.2d 429 and Whaley v. Associated Transport, Inc., 6 Cir., 330 F.2d 706 (cases that were tried in this Court).

In the case of Yellow Cab Co. v. Pewitt, 44 Tenn.App. 572, at page 584, 316 S.W. 2d 17, the Court said:

" * * * In a case for personal injuries the law can only say that plaintiff is entitled to reasonable compensation for his bodily injuries, his pain and suffering, his disability, loss of earnings and expenses; it cannot furnish any fixed or certain standard for measuring such damages, but must leave the amount to the judgment of a jury guided by the facts and circumstances of the case. Power Packing Co. v. Borum, 8 Tenn.App. 162, 180; City of Nashville v. Brown, 25 Tenn.App. 340, 350, 157 S.W.2d 612; Thoni v. Hayborn, 37 Tenn.App. 56, 61–62, 260 S.W.2d 376."

In the case of National Funeral Home v. Dalehite, 15 Tenn.App. 482, at page 499, the Court stated:

"It has been well said in passing upon the question, whether or not the verdict is excessive in a personal injury case that the damages therefor must be so excessive as to strike mankind, at first blush, as being beyond all measure unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption. In short the damages must be flagrantly outrageous and extravagant or the court cannot undertake to draw the line: for they have no standard by which to ascertain the excess. * * "

A $290,000.00 verdict was upheld by the Court of Appeals of Tennessee in the case of Dixie Feed and Seed Company v.

Byrd, 52 Tenn.App. 619, 376 S.W.2d 745 (1963). (The jury gave $380,000.00.) The injuries in that case were very severe, plaintiff being permanently paralyzed from the waist down. He was a man 59 years of age with a life expectancy of 16.4 years and had been earning $6,000.00 a year. Plaintiff in the present case has a life expectancy of 43.08 years.

The language used by Judge O'Sullivan in the case of Jenkins v. Associated Transport, Inc., 330 F.2d 706, at 712, is appropriate to the consideration of the problem in the present case:

"We think the jury's award of $100,-000 was not excessive as compensation for Whaley's present and future damages. Such was the view of the District Judge in denying defendant's motion for a new trial. It was first the jury's responsibility to fix the award of damages, Reeves v. Catignani, 157 Tenn. 173, 176, 7 S.W.2d 38, and their decision is not subject to interference by the trial judge 'unless so excessive * * * as to be indicative of prejudice, passion, partiality, or corruption on the part of the jury * * * or upon a consideration of elements not within the scope of the action.' 25 C. J.S. 'Damages' § 196. It is familiar law that, absent abuse of discretion or clear mistake, the judgment of the judge who presided at the trial that a verdict was not excessive will control. Cross v. Thompson, 298 F.2d 186, 187 (CA 6, 1962)."

Defendants cite a number of cases to support their contention that the verdict is excessive. The first one cited is that of Pierce v. United States, D.C., 142 F. Supp., 721 (1955), decided by the late Judge Darr of this Court. In that case the Court allowed $53,984.81 for the loss of both hands. Artificial substitutes had been procured by plaintiff which he wore in Court and apparently manipulated them well. We are unable to determine from the opinion the age of plaintiff or the amount of his salary. The Court stated that it worked out a general formula after examination of the cases and was of the opinion that the amount allowed was in line with other awards that have been allowed in Tennessee cases.

In the case of Tracy v. Finn Equipment Company, 310 F.2d 436, a case that arose in this Court, the jury allowed $65,000.00 for the loss of a hand.

Esso Standard Oil Company v. Lilly, supra, Whaley v. Associated Transport, Inc., supra, and Marmo v. Chicago, R. I. & P. R. Co., 350 F.2d 236 (C.A.7, 1965), were also cited by defendants.

Defendants contend that plaintiff was guilty of proximate negligence which would bar recovery, but if not guilty of proximate negligence he was guilty of remote contributory negligence that would mitigate his damages.

The grounds of negligence relied upon were that he was driving his car with one light on a much-traveled highway and was driving with his left arm extended out the window of his automobile even though he realized the truck was partially on its wrong side of the road when 200–300 feet separated the vehicles and if he had retracted his arm the accident would have been averted.

Defendants contend that the physical facts disclosed that the first blood stains on the pavement were on the plaintiff's wrong side of the road.

All of these were disputed questions of fact which produced conflicting testimony. For example, the passenger in plaintiff's car testified that the truck was from two to three feet on the wrong side of the road at the time of the accident.

In the opinion of the Court the verdict of $150,000.00 exceeds the awards of juries for similar injuries in this area. For this reason, a remittitur of $25,000.00 is indicated. Unless the remittitur of $25,-000.00 is accepted within ten days from date, a new trial is granted.

The third and fourth grounds assert that the preponderance of the evidence is in favor of the defendants and against the plaintiff and that the verdict is inconsistent and contrary to the law and the evidence.

It is the opinion of the Court that each of these grounds is untenable and must be overruled, except as to the amount of the award.

If the remittitur is accepted, the motion for a new trial in all other respects is overruled.