James Hall, Carl Pinckney, Milton Hall and John Jackson, Appellants, v. E. A. Gallagher, individually and trading as E. A. Gallagher & Sons, Appellee.

(*October* 2, 1956.)

Southerland, C. J., Wolcott and Bramhall, J. J., sitting.

*William F. Lynch, II* (of the firm of Morris, James, Hitchens and Williams) for appellants.

*William H. Bennethum* (of the firm of Morford and Bennethum)' for appellee.

Supreme Court of the State of Delaware, No. 16, 1956.

Bramhall, J.:

Appellee, a common carrier of freight by truck, operating under a certificate issued by the Interstate Commerce Commission (I. C. C.), was engaged in the hauling of steel from Sparrows Point, Maryland, to the plant of the Budd Company in Philadelphia, Pennsylvania. In order to acquire sufficient equipment for this purpose, appellee had leased various tractor-

trailers under what was known as a "one-way-trip lease", that is, a lease covering only the trip from Sparrows Point, Maryland, to Philadelphia, terminating upon the unloading of the steel. Although the drivers of the tractor-trailers made frequent trips for appellee, it was the practice for the owner of the tractor-trailer prior to the beginning of each trip to receive from appellee a lease of the nature above described.

The pertinent provisions of the lease are: (1)' that the term thereof should be for a single trip only from Sparrows Point, Maryland to Philadelphia, Pennsylvania; (2) that the lease should terminate upon delivery of the steel at Philadelphia; (3) that the liability of lessee should be specifically limited to the trip provided for in the lease; (4) that the payment of the rental of the tractor-trailer should be computed on the basis of the consideration expressed in the manifest (which counsel agree was on the basis of the tonnage and the mileage covered in the transportation of the load); (5)' that for the duration of the lease the lessee would assign and affix to the tractor-trailer its I. C. C. placard, to be removed upon the arrival of the tractor-trailer at its destination and the delivery of the load.

Prior to the accident the tractor-trailer was leased by appellee on a number of consecutive days in hauling steel from Sparrows Point to Philadelphia. On a few occasions, appellee also leased the tractor-trailer for a return trip. On each trip—including those for which the tractor-trailer was hired for a return trip—a one-way-trip lease was executed by appellee covering that trip only. It was indicated on the I. C. C. placard referred to in the lease that the tractor-trailer was being operated by appellee. The driver frequently neglected to remove the placard upon the delivery of the steel.

On January 22, 1953, appellants were injured in an accident near Naaman's, Delaware, as a result of a collision between an automobile in which they were occupants and a tractor-trailer which had been leased by appellee under the terms of

the lease above described to cover the trip from Sparrows Point, Maryland, to Philadelphia, Pennsylvania. At the time of the accident the driver of the tractor-trailer had delivered and unloaded the steel at the Budd plant in Philadelphia and was returning empty except for some wooden forms which had been used in shoring the steel in place.

At some time, either during the trip to Philadelphia or on the return therefrom, the driver of the tractor-trailer telephoned the dispatcher of appellee, inquiring as to whether or not there would be another load for him upon his return. The driver was informed that he should return to Sparrows Point, where there would be a load waiting for him.

Appellee filed a motion to dismiss on the ground that at the time of the accident the tractor-trailer was not owned by and was not being operated for, on behalf of or at the request of appellee. It was further alleged therein that the driver of the tractor-trailer was not in the employ of appellee. Affidavits were filed by both appellants and appellee. Under Rule 12(c) *Del. C. Ann.*, the motion was treated as a motion for summary judgment under Rule 56. The lower court granted appellee's motion, whereupon appellants appealed.

The question for determination is the responsibility of a common-carrier of freight by motor vehicle, operating under a certificate from the I. C. C., for the negligence of the driver of a tractor-trailer leased by the common-carrier under a one-way-trip lease, where at the time of the accident the driver had delivered his load and was returning for another load.

Appellants assert that sufficient facts are presented from which inferences may be drawn permitting a jury to hold appellee responsible under the doctrine of *respondeat superior* or under the general provisions of agency. Appellants further contend that, assuming that this court should decide that the owner of the tractor-trailer is in fact an independent contractor, nevertheless, sufficient facts are presented from which a jury might

reasonably infer that appellee is responsible for the accident on the theory that the duty of appellee as a common carrier was non-delegable.

In making its first point appellants rely upon certain facts which, taken together, they say, make appellee responsible. They are: the fact that trips were made from Sparrows Point to Philadelphia, under the same arrangement, for at least 16 or 17 days prior to the accident; the presence of appellee's name and I. C. C. number upon the side of the tractor-trailer at the time of the accident; the retention by the driver of the wooden racks used to shore up the steel while being hauled; the telephone call by the driver to appellee's dispatcher; the procedure set up by appellee of having the driver accept receipts for loads on behalf of appellee and return thereof by the driver to appellee, the exercise of control of driver by appellee by reason of telephone calls. Appellants say that because of these facts the lease constituted merely a sham or subterfuge, written solely for the purpose of reducing the responsibility of appellee and the expense of liability insurance which he might otherwise have incurred.

We must disagree with the appellants' contention. A one-way-trip lease was at the time permitted by the I. C. C. It was explicitly provided in the lease that it covered a one-way-trip only. The lease is clear and speaks for itself. Neither do the facts relied upon by appellants prove any later variation of the terms of the lease or even that such a variation was intended. The fact that—unknown to appellee and contrary to the terms of the lease—the I. C. C. placard was left on the tractor-trailer after the termination of the lease indicates no intention on the part of appellee to consent to any variation in the terms of the lease. The telephone conversation does not show that any effort was made to vary the terms of the lease. The parties had been dealing under separate one-way-trip leases. Both the driver of the tractor-trailer and the owner thereof knew of the fact that it was a definite policy of appellee that such a lease must be signed on every trip. Since no mention was made of the fact

that any change was contemplated, the clear inference is that no change was intended. Neither do we think any inference can be drawn from the fact that the wooden racks were retained on the tractor-trailer. The record discloses that it was necessary to remove them from the premises at the time of the delivery of the steel. Assuming that they were being returned by the driver for the purpose of using on another load, we fail to see how that in any way affects the responsibility of appellee. The total of the facts upon which appellants rely—since in none of them is there shown any clear intention to change the lease—is of no greater help to appellants.

But appellants contend that even if, under the circumstances of this case, this court should determine that the doctrine of *respondeat superior* or agency has no application, nevertheless, because of the nature of the enterprise, together with its relation to appellants and the public generally, appellee's responsibility was such as to place upon it a duty which could not be delegated to an independent contractor.

Appellants cite *Restatement of the Law of Torts,* Negligence, § 428. This section relates to the responsibility of an individual or corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority involving an unreasonable risk to others. We have held that the lease is valid and that the accident occurred at a time not covered by its terms. The section of *Restatement* quoted by appellants cannot under any circumstances have any application to the facts of this case because during the return trip of the tractor-trailer it was not being operated under the franchise.

The only question remaining for determination is whether or not a new contract of employment was created by the telephone call between the driver of the tractor-trailer and appellee's employee.

Appellants say that a new contract of employment was created, consisting of an offer on the part of appellee to pay the driver the usual mileage fee if he would carry the steel as before,

and of an acceptance of that offer by the owner of the tractor-trailer. Appellants contend that the driver of the tractor-trailer had to come from Philadelphia for the purpose of picking up the steel and that his employment began when he started on the return trip from Philadelphia.

We do not consider that the telephone call involved any change in the lease, or was part of any new contract. There was a lease already in existence. Both appellee and the driver of the tractor-trailer knew it was a one-way-trip lease. It is clear from the depositions that the purpose of the call was to enable the driver to ascertain whether or not there would be a load waiting for him upon his return. There was nothing in the conversation which could be interpreted as indicating that the parties desired to change the lease or to enter into a new contract. The advice from the appellee's office was simply information that more business was available. The natural inference is that a new one-way-trip lease would thereafter be entered into, in accordance with the practice, when the load was picked up.

We think that this case is in point with the case of *Costello v. Smith*, 2 Cir., 1949, 179 *F.* 2d 715, 16 *A. L. R.* 2d 954. The lease agreement in that case was very similar to the one here. The court recognized the general rule of law relating to independent contractors, namely, that one operating under a public franchise cannot escape liability by engaging an independent contractor to carry on in his behalf. The court pointed out, however, that the lease was a one-way-trip lease and that the employment had ended upon the delivery of the cargo. The court further said that since there was no statute or regulation forbidding a one-way-trip lease, the language of the lease was controlling and could not be changed by a judicial decision. See also *Simon v. McCullough Transfer Co.*, 155 *Ohio St.* 104, 98 *N. E.* 2d 19.

The case of *Gallagher's Estate v. Battle*, Md. 1956, 122 *A.* 2d 93, 101, is a companion case to the case before us. That case was tried before a jury and a verdict for plaintiff was rendered.

The facts introduced at the trial were substantially the same as those presented on the motion before the Superior Court in this state. The Court of Appeals held, as we have held, that the facts showed that the driver of the tractor-trailer was not the appellee's agent on the return trip from Philadelphia. In reversing the judgment for plaintiff "without a new trial", the court said:

"As pointed out in *Costello v. Smith*, * * * the constituted authority for regulating the operation of common carriers in interstate commerce is the I. C. C. At the time this accident occurred the Commission was content not to regulate the operation of employee trucks after the termination of the one-way lease. The courts should not by judicial decision supplement the Commission's regulations."

The judgment of the lower court is affirmed.