502

MARY A. LEOTTA, Individually and as Administratrix of the Estate of ALFRED R. LEOTTA, Deceased, Respondent, *v.* JOSEPH E. PLESSINGER, Defendant, HARVEY B. HOLE, Respondent-Appellant, and RIGGS DAIRY EXPRESS, INC., Appellant.

ELLEN AXTELL, Respondent, *v.* JOSEPH E. PLESSINGER, Defendant, HARVEY B. HOLE, Respondent-Appellant, and RIGGS DAIRY EXPRESS, INC., Appellant.

VIDA AXTELL, Respondent, *v.* JOSEPH E. PLESSINGER, Defendant, HARVEY B. HOLE, Respondent-Appellant, and RIGGS DAIRY EXPRESS, INC., Appellant.

Fourth Department, July 9, 1959.

*John B. Mowry* (*Domenick L. Gabrielli* of counsel), for Mary A. Leotta, respondent.

*Charles P. Knapp* for Ellen Axtell and another, respondents.

*Gilbert R. Hughes* for Riggs Dairy Express, Inc., appellant.

*Robert M. Wightman* for Harvey B. Hole, respondent-appellant.

GOLDMAN, J.   Verdicts were rendered against the defendants Harvey B. Hole and Riggs Dairy Express, Inc., in amounts ranging from $5,000 to $125,000.   Thereafter, pursuant to section 264 of the Civil Practice Act a motion by defendant Hole was granted at Trial Term for judgment over against Riggs Dairy Express, Inc.   In addition judgments in equal amounts were directed against the defaulting defendant, Joseph E. Plessinger, operator of the tractor owned by Hole and found by the jury to have been operated by Plessinger at the time of the accident in the business of Riggs Dairy Express, Inc., to which reference will be made as " Riggs ".

Riggs contends on this appeal that it was error to submit to the jury the issue whether at the time of the accident on November 22, 1956, under the terms of the leasing agreement to which we shall refer subsequently, Plessinger was in the course of his employment with defendant Riggs.   It is undisputed that Plessinger had been Hole's employee for seven years before the accident.

Hole asserts that Plessinger at the time of the accident was violating his (Hole's) instructions in operating the tractor while disconnected from the trailer.   Neither defendant asserts that the evidence is insufficient to support the verdicts as to negligence or freedom from contributory negligence.   Likewise, no claim is made that the verdicts are excessive.   We find sufficient evidence to support the verdicts against defendant Hole.

There remains then the question presented by the appeal of Riggs.   It appears that on November 15, 1956 Riggs leased a

tractor and trailer owned by defendant Hole for the purpose of transporting a cargo of butter, an Interstate Commerce Commission regulated commodity, from Chicago, Ill. to Somerville, Mass. The transportation was under the Interstate Commerce Commission rights of defendant Riggs. Mr. Plessinger arrived at his destination, Somerville, Mass., unloaded his cargo and made a report call to Riggs' office to notify Riggs that he had completed the trip. No arrangements had been made by Riggs for a return load and despite efforts by Plessinger to secure a load from any shipper none was available in Somerville. Mr. Plessinger thereupon proceeded to Avoca, New York in search of a return cargo to the midwest. He disconnected the tractor from the trailer and drove to a nearby restaurant. The tractor, on the return trip to Avoca collided with an automobile resulting in the death of Alfred R. Leotta and injuries to his two passengers giving rise to the present litigation. At the time of the accident Plessinger had not removed the decal bearing Riggs' Interstate Commerce Commission permit number, which had been taped to the door of the tractor.

The pertinent provisions of the lease are:

"1. The lessor hereby leases and delivers to the lessee the following described motor vehicle(s) for the duration of a single (outbound) (return) trip, to be used by Lessee in transporting property from Chicago to Somerville, Mass." [all in printed form except the starting point and destination which are in typewriting].

"2. It is agreed that this agreement shall be in effect from the commencement of the loading of the said motor vehicle(s) to the termination of the unloading. * * *

"4. Lessor represents that said equipment, the owner, driver, and operator thereof, at all times during the term of this lease, comply, and shall comply with the rules and regulations of the Interstate Commerce Commission and all statutes, ordinances, state and federal regulations and laws pertaining to the operation thereof * * *; lessor by these presents, agrees to indemnify and hold lessee harmless of penalties and fines by reason of the violation of any provision thereof.

"5. Lessor shall keep, maintain, and equip said vehicles in good condition and in accordance with all local, state and Federal laws and the rules and regulations of the Interstate Commerce Commission and commissions of the states through which said vehicles are to be operated, at lessor's cost and expense.

"6. Lessor shall furnish driver and pay all expenses of the operation of said vehicles; lessee shall not be liable for any loss

or damage to said vehicles, however caused, while in use under the terms of this lease; lessor agrees to indemnify and save harmless lessee for loss or damage to cargo from any and all causes whatsoever, except loss or damage due to acts of God. * * *

" 9. Total Lessor Revenue $362.64." [which was payment computed on the basis of a one-way trip from Chicago, Ill. to Somerville, Mass.].

" 10. DRIVER MUST STOP AT FOLLOWING DESIGNATED CHECK STATIONS.— (12) " [Check station 12 is identified as " MIDWAY STATION (Eastbound) — Penn. Turnpike "]. " Scheduled arrival Nov 17, 1956.

" 11. Received above load, ICC plates noted and instructions read and acknowledged. Joe · Plessinger " [in Plessinger's handwriting] —" Driver's Signature ".

Under the plain and unambiguous terms of the contract between the parties this was a one-way lease which had been fully performed five days prior to the time of the accident, at which time Plessinger was not operating for lessee Riggs but was wholly and solely the employee of lessor, Hole.

The fact situation in the case at bar is almost identical with that in *Costello* v. *Smith* (179 F. 2d 715). At page 718 the United States Court of Appeals (Second Circuit) made this pertinent statement: " The Commission's brief states that ' Private carriers are subject to the Act only with respect to safety of operations, hours of service of employees and standards of equipment, as indicated in Section 204(a) (3) ' * * * Nor do the present regulations forbid a common carrier such as Johnson from making a one-way lease with an independent contractor such as Withers. In the absence of statutory command or of regulatory action by the Commission, we cannot say that a one-way lease is so far contrary to the policy of the Act that a court should impose liability on the lessee after the lease has ended."

The Supreme Court of Delaware in a similar holding in *Hall* v. *Gallagher* (125 A. 2d 507 [Del.]) considered the same general fact situation involving a one-way lease. In that case, as in the instant appeal, the lessee's Interstate Commerce Commission placard was not removed by the lessor's agent and was upon the tractor-trailer when the accident occurred. At page 509, the court said: " The fact that — unknown to appellee and contrary to the terms of the lease — the I. C. C. placard was left on the tractor-trailer after the termination of the lease indicates no intention on the part of appellee to consent to any variation in the terms of the lease."

In *Hall* v. *Gallagher* (*supra*) the plaintiff argued that Gallagher should be held liable under section 428 of the Restatement of the Law of Torts. The court rejected this contention in the following statement (pp. 509, 510): " This section relates to the responsibility of an individual or corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority involving an unreasonable risk to others. We have held that the lease is valid and that the accident occurred at a time not covered by its terms. The section of Restatement quoted by appellants cannot under any circumstances have any application to the facts of this case because during the return trip of the tractor-trailer it was not being operated under the franchise.''

Upon completion of the " single trip '' to Somerville, Mass., Riggs' control over Plessinger, or its right to direct his movement, ceased. After the unloading of the Riggs' cargo the relationship of lessor and lessee terminated and the sole employer of Plessinger was defendant Hole. Driver Plessinger stated that he was " at liberty '' to carry what he chose for anyone once he had unloaded. The failure of Plessinger to remove the Riggs' decal, a circumstance entirely unrelated to the accident, cannot fix liability on Riggs once the lease ended. The instruction to Plessinger to remove the decal at the completion of the unloading would seem to be implicit in Plessinger's acknowledgment in his deposition that he was familiar with the I. C. C. regulations and would abide by them.

Section 207.4 (subd. [d], par. [1] of I. C. C. regulations; Code of Fed. Reg., tit. 49) placed the responsibility on Plessinger, defendant Hole's agent, to remove the decal on the termination of the lease and similarly section 207.4 (subd. [a], par. [6]), which provided that the time for giving the receipt for possession of the vehicle shall coincide with the duration of the lease, also cast this obligation upon Plessinger. His failure to comply with these regulations, once the lease terminated at Somerville, did not revive the liability which Riggs had had and which ceased at the time of unloading. A comparable situation was presented in *Simon* v. *McCullough Transfer Co.* (155 Ohio St. 104). As in the instant case the driver had not removed the decal and had the receipt copy of the weight sheet of the carrier in his possession at the time of the accident. At page 116 the court laid down the rule which in our judgment determines this appeal: " Since at the time of the accident in the present case Bolton, an independent contractor, was in no sense under defendant's guidance or control; since all business relationships between them were at an end, to be resumed, if at all, only by a subsequent consent

or agreement between them; and since at such time Bolton was far away from where he had completed his work for defendant and was not engaged in any transportation project for defendant, it would be neither logical nor reasonable to cast liability for Bolton's acts upon defendant.'' (Also, see, *Hall* v. *Gallagher*, 125 A. 2d 507, *supra*; *Eckard* v. *Johnson*, 235 N. C. 538; *Gallagher's Estate* v. *Battle*, 209 Md. 592.)

*American Tr. Lines* v. *Smith* (246 F. 2d 86) is not a departure from the rule of *Costello* v. *Smith* (179 F. 2d 715, *supra*) and is distinguishable from the case at bar upon its facts for it did not involve a true single trip lease. The Sixth Circuit Court explicitly said this at page 89 in the following statement: '' In Costello v. Smith, supra, and Eckard v. Johnson, supra, the trip lease involved contained specific provisions to the effect that liability should terminate upon completion of delivery. The alleged trip lease presented in evidence here contains no such provision.'' Paragraph 2. of the Riggs' lease specifically provided that the lease should be in effect only '' to the termination of the unloading ''. To extend the duration of this lease to a time five days later and several hundred miles from Somerville, Mass., is clearly violative of the terms of the agreement.

The payment of $9 by Hole to Riggs for assisting Hole in securing insurance coverage for the trip from Avoca to a western point of destination, in the light of the testimony that this was purely a service charge, cannot connect Riggs with any interest in the return trip. Riggs had no interest whatsoever in this trip for which Hole and Plessinger received the entire revenue and about which Riggs had no knowledge or participation in other than the telephone call by Hole to Riggs to assist Hole in securing insurance coverage.

Although there was considerable discussion in the record concerning the I. C. C. regulations with reference to single trip leases, it was recognized by the trial court and conceded by the attorneys for the respective parties that section 207.4 (subd. [a], par. [3]) which provides that equipment leased by authorized carriers shall be for a period of not less than 30 days, was not in effect at the time of the accident. The lease in all respects complied with Interstate Commerce Commission rules and regulations in existence on November 22, 1956. The lease being clear and unambiguous it should have been interpreted as a matter of law by the trial court (*Brainard* v. *New York Cent. R. R. Co.*, 242 N. Y. 125, 133) and should not have been left to the jury for interpretation as a question of fact, as was done by the court's charge.

The judgments against Riggs Dairy Express, Inc., should be reversed and the complaints and cross claim dismissed and otherwise the judgments appealed from should be affirmed.

HALPERN, J. (dissenting). I dissent from the dismissal of the complaint against Riggs Dairy Express, Inc. I agree that, if Riggs had been the operator of a private unregulated business, its responsibility under the terms of the written lease would have ended upon the delivery of the cargo at Somerville, Massachusetts. But the Riggs Company was not the operator of a private business; it was the holder of a franchise under which it operated as a common carrier in interstate commerce and it was subject to regulation by the Interstate Commerce Commission. The rules and regulations adopted by the Interstate Commerce Commission regulating the lease of vehicles by motor carriers overrode any inconsistent provisions of the written lease and effectively determined the period during which the Riggs Company continued to be responsible for the operation of the leased equipment. This aspect of the case, it seems to me, is not given adequate attention in the majority opinion.

Single-trip leases of equipment had long been a source of concern to the Interstate Commerce Commission. The evils were self-evident. The equipment was not maintained with the same care as the equipment owned and regularly operated by the carrier; during the return trip, there was no adequate provision for the protection of the public; very often there was great uncertainty as to when the control and responsibility of the lessee ended and that of the lessor reattached; leases were often made orally, in person or by telephone, and the change of possession would be claimed to have taken place by word of mouth. To overcome these evils, the commission adopted regulations governing the "Lease and Interchange of Vehicles by Motor Carriers", which became effective on September 1, 1953 (Code of Fed. Reg., tit. 49, ch. 1, subch. B, pt. 207). These were the regulations which were in effect at the time of the accident in this case. Subsequently, an additional regulation became effective, virtually putting an end to single-trip leases by requiring that the lease be for a period "not less than 30 days when the equipment is to be operated for the authorized carrier by the owner or employee of the owner" (except equipment of a farmer, agricultural cooperative or private carrier of certain perishable property) (Code of Fed. Reg., tit. 49, § 207.4, subd. [a], par. [3]).

For a review of the conditions which gave rise to the regulations, see *American Trucking Assns. v. United States* (101 F.

Supp. 710, 726–728, affd. 344 U. S. 298); see, also, Reports of Interstate Commerce Comm. (51 M. C. C. 461; 52 M. C. C. 675) and articles in the law reviews (43 Iowa L. Rev. 531; 34 Boston Univ. L. Rev. 308).

The validity of the regulations was upheld in *American Trucking Assns.* v. *United States* (344 U. S. 298 [1953], *supra*). Subsequent to the decision of that case, Congress amended the statute on August 3, 1956, so as to specifically confirm the authority of the Interstate Commerce Commission to adopt the regulations, with certain limitations not relevant here (49 U. S. Code, § 304, as amd. by act of Aug. 3, 1956, ch. 928). The regulations, within the sphere to which they apply, have "the force and effect of law" (*Interstate Motor Lines* v. *Great Western Ry. Co.*, 161 F. 2d 968, 970; *Tri-State Cas. Ins. Co.* v. *Loper,* 204 F. 2d 557).

The relevant rules and regulations in effect at the time of the accident were in part as follows:

"Section 207.4 *Augmenting Equipment.* * * *

"(a) The contract, lease, or other arrangement for the use of such equipment:

* * *

"(2) Shall be in writing and signed by the parties thereto * * *

"(4) Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto by the authorized carrier * * *

"(6) * * * The duration of the contract, lease or other arrangement shall coincide with the time for the giving of receipts for the equipment, as required by paragraph (b) of this section * * *

"(b) *Receipts.* * * * when the possession by the authorized carrier ends, it or its employee or agent shall obtain from the owner of the equipment, or its regular employee or agent duly authorized to act for it, a receipt specifically identifying the equipment and stating therein the date and the time of day possession thereof is taken.

* * *

"(d) *Identification of equipment.* The authorized carrier acquiring the use of equipment under this section shall properly and correctly identify such equipment as operated by it when such equipment is operated by or for such carrier, during the

period of the lease, contract or other arrangement, in accordance with the Commission's requirements   *   *   *

"(1) The authorized carrier operating equipment under these rules in this part shall remove any legend, showing it as the operating carrier, displayed on such equipment, and shall remove any removable device showing it as the operating carrier, before relinquishing possession of the equipment."

It is undisputed in this case that the Riggs Company, as lessee, had not obtained from the lessor a receipt showing that the possession of the equipment had been returned to the lessor, prior to the time of the occurrence of the accident. On the contrary, the unsigned blank form of receipt, which was printed at the bottom of the lease, was still in the leased vehicle at the time of the accident. The receipt was never signed. The lease was returned to the Riggs Company at its office in Versailles, Ohio, on December 5, 1956, about two weeks after the accident, when a final settlement was made between Riggs and the lessor.

It is also undisputed that the "decal" or removable placard, giving the name of Riggs as the operating carrier and giving the number of its Interstate Commerce Commission certificate, was still on the truck at the time of the accident. It was not removed until the vehicle reached Chicago on its return trip, several days after the accident.

Under the terms of the Interstate Commerce Commission rules and regulations quoted above, there had been no effective relinquishment of possession by the Riggs Company prior to the time of the accident. Therefore, the Riggs Company was still responsible for the operation of the vehicle and it was liable to the persons injured by negligence in the course of its operation (cf. Restatement, Torts, § 428).

It is not necessary to find, in order to hold Riggs liable, that the lease as such was still in force at the time of the accident; it is enough that Riggs had not effectively relinquished possession, under the terms of the regulations, and that it was still chargeable with responsibility for the operation of the equipment. However, under a charge properly submitting the question, a jury might well find that the lease itself was still in effect at the time of the accident, in view of the provision of subdivision (a), paragraph (6), of section 207.4 of the regulations, quoted above, to the effect that the duration of the contract, lease or other arrangement "shall coincide with the time for the giving of receipts for the equipment". There was evidence from which the jury could find that the understanding or arrangement

between the parties was that the receipt was to be surrendered to the carrier, with the lease of which it was a part, at the time of the making of final settlement, upon the return of the vehicle to the home terminal. There was evidence that this was in accordance with the " customary practice " which had long been followed by the parties. It is noteworthy that, in this case, the blank unsigned receipt was accepted without comment by the Riggs Company upon the making of the final settlement on December 5, 1956, long after the occurrence of the accident. Upon the evidence, it could be inferred by the trier of the facts that " the time for the giving of receipts for the equipment ", under the agreement between the parties, was the time of the return of the driver to Chicago and, by force of subdivision (a), paragraph (6), of section 207.4 of the regulations, the duration of the lease was accordingly extended to that time. The Riggs Company would concededly be liable for any injury which occurred while the lease was still in force (Restatement, Torts, § 428; *Costello* v. *Smith,* 179 F. 2d 715; *Hodges* v. *Johnson,* 52 F. Supp. 488).

Furthermore, the regulations made it the duty of the carrier as lessee of the equipment to see to it that any insignia " showing it as the operating carrier " was removed before relinquishing possession (subd. [d], par. [1]). The responsibility for compliance with this regulation was placed squarely upon " the authorized carrier " by the terms of the regulation. The duty was a nondelegable one. If Riggs entrusted compliance to the driver of the truck, either as its agent or as the agent of the lessor, it would be responsible for his failure to perform the assigned task. The Riggs Company would therefore be liable, even if it had instructed the driver to remove the insignia before starting on the return trip and he had failed to do so.

However, in this case, there is a broader basis upon which a jury could hold the Riggs Company liable. There is no evidence that Riggs ever instructed Plessinger, the driver in this case, to remove the decal upon the completion of the outbound trip. No word of criticism was uttered by any officer or employee of Riggs when it was found that the decal was still on the truck at the time of the accident in this case. The jury would be justified in inferring from the evidence that the Riggs Company had consented to the use of the decal upon the return trip, " showing it as the operating carrier ". There was evidence from which it could be inferred that the Riggs' drivers under one-way leases had regularly retained the decals on the trucks on the return trips with the acquiescence of Riggs. The broker who arranged for shipments of agricultural products on the return trips testi-

fied that he used the name of Riggs as the carrier on the manifests or way bills issued by him for the return shipments partly because the name of Riggs was on the trucks. The manifest for the return shipment in this case showed Riggs as the carrier.

It is also worth noting in this connection that Riggs had the return trips under one-way leases covered by its liability insurance policy. The record is obscure on this point, but it appears that Riggs had an insurance policy, the premium of which was determined on a gross revenue basis, which was available only to motor carriers operating an extensive fleet of trucks (Automobile Casualty Manual, p. 68). It was arranged between Riggs and the lessor of the equipment that, if any cargo was obtained for the return trip, the lessor or the driver would notify Riggs of the amount of the gross revenue to be obtained for the shipment and Riggs would then charge the lessor 6% of the gross revenue for coverage of the return trip under its insurance policy. In this case, the cargo on the return trip consisted of a load of potatoes to be transported from Avoca, New York, to Cleveland, Ohio, and the transportation charge was $150. The lessor of the truck notified Riggs of these facts and Riggs accordingly charged him $9 for insurance coverage. This amount was paid to Riggs.

It is recognized that Riggs did not receive any other part of the revenue on the return trip but it is apparent from the whole record that Riggs had a strong interest in helping the single-trip operators to make their return trips profitable, so that they would continue to be available for repeated outbound trips. Riggs used single-trip operators extensively in its common carrier business. In the month of the accident, November, 1956, Riggs used 35 trucks under single-trip leases; it only had three tractors of its own. It paid the lessor of the truck involved in this case a total of over $7,500 for the year 1956. Riggs retained 25% of the transportation charges and paid the rest to the lessor, to include compensation to the driver, oil and gas, and maintenance of the truck. As the driver Plessinger explained, unless a shipment was obtained for the return trip, the whole operation would not be profitable for the lessors and drivers and they could not afford to stay in business.

Riggs advised the drivers of places where they would be likely to find return shipments. Some time before the accident, the Riggs manager specifically advised Plessinger that the broker at Avoca, New York, was likely to have return shipments of potatoes and suggested that he try him if he had no other load for a return trip.

The permission to retain the Riggs' I. C. C. decals or placards upon the trucks was part of the same pattern, designed to serve the same end, or at least a jury could so find. While it was not necessary to use the I. C. C. franchise for shipments of agricultural products, since they were exempt, the permission to use Riggs' name and I. C. C. certificate number was helpful in various ways upon the return trip. For one thing, prospective shippers were more likely to give business to one who operated under an established common carrier name and certificate than to an individual trucker operating under his own name without I. C. C. certification and without any evidence of financial responsibility. Furthermore, public officials checking the vehicle en route would be influenced by the presence of the I. C. C. placard as indicating that proper inspections of the vehicle had been made and that the operation was being conducted by a responsible certificated carrier.

Whatever Riggs' motive may have been in giving its consent to the continued use of the I. C. C. placard upon the vehicle, such use fastened upon Riggs responsibility to the public for the operation of the vehicle during the return trip. It created a "public estoppel" which estopped it from asserting that the vehicle was not being operated on its behalf and under its control at the time of the accident. Under the regulations, the Riggs' decal could lawfully be displayed only while the leased vehicle was being operated under Riggs' control and upon its responsibility. To allow it to be displayed at any other time was a violation of the regulations. Therefore, for the period during which it permitted the decal to be displayed, Riggs was estopped to deny that the truck was being operated under its control and upon its responsibility (cf. *Fullerton* v. *Motor Express,* 375 Pa. 173; *Kissell* v. *Motor Age Transit Lines,* 357 Pa. 204, 209; 49 U. S. Code § 315).

In this respect, the cases in this State fixing responsibility upon the holder of a certificate of automobile registration who allows his license plates to be used by another, in violation of law, are in point. The licensee is liable to the public as if he were the owner of the vehicle on which the plates were displayed and he will not be heard to say that he was not (*Shuba* v. *Greendonner,* 271 N. Y. 189; *Reese* v. *Reamore,* 292 N. Y. 292; *Buono* v. *Stewart Motor Trucks,* 292 N. Y. 637; *Switzer* v. *Aldrich,* 307 N. Y. 56; *Switzer* v. *Merchants Mut. Cas. Co.,* 2 N Y 2d 575; *Phoenix Ins. Co.* v. *Guthiel,* 2 N Y 2d 584).

What was said by the Court of Appeals in *Switzer* v. *Aldrich* (*supra,* p. 59) may be directly applied here, with only slight adaptations of the language of the court: "The proof intro-

duced by plaintiff   *   *   *   [that the ICC decal] on the truck had been issued to [Riggs], constituted prima facie evidence that [Riggs was in control of the operation of the truck] *   *   *   (*Ferris* v. *Sterling,* 214 N. Y. 249, 253).   Whether [Riggs] should have been permitted to rebut this presumption *   *   *   by proof that established *violations* of the statute and the commissioner's regulations   *   *   *   is the precise question presented on this appeal   *   *   *   [I]t would be against public policy to permit one to assert his improper act, which was directly in violation of the   *   *   *   [ICC regulations], in order to avoid liability ''.   What the court quoted from its prior decision in *Shuba* v. *Greendonner* (*supra*) may also be applied here: '' The Legislature [the Interstate Commerce Comm.] has been very specific in making rules *for the purpose of facilitating identification of an owner by the police and the public,* fastening responsibility for injuries and requiring evidence of ability to respond in damages to injured persons ''.   It would frustrate the governmental policy to allow Riggs to escape liability for the operation of a truck on which its I. C. C. decal was displayed with its consent.

The case of *Costello* v. *Smith* (179 F. 2d 715, *supra*) upon which the majority opinion relies, was decided before the adoption of the 1953 regulations.   In fact, the court in that case suggested that, if the state of the law as declared by it was unsatisfactory, it was up to the Interstate Commerce Commission to adopt appropriate regulations, specifying the circumstances under which the carrier-lessee would be held liable for the operation of a leased vehicle beyond the termination of a one-way trip lease.   This the commission subsequently did.

It should also be noted that in the *Costello* case, the common carrier had taken its decal or identification sign off the truck before the driver started on his return trip.

All the other cases cited in the majority opinion are, like the *Costello* case, cases which involved accidents which occurred prior to September 1, 1953, the effective date of the regulations. This was specifically pointed out in *Hall* v. *Gallagher* (50 Del. 148), from which the majority opinion quotes extensively.   The court underlined this by quoting from a companion case growing out of the same accident (*Gallagher's Estate* v. *Battle,* 209 Md. 592, 609) the following: ''At the time this accident occurred the Commission was content not to regulate the operation of employee trucks after the termination of the one-way lease.''

Even as to accidents which occurred before the effective date of the regulations, the courts in other jurisdictions rejected the view taken in the cases cited in the majority opinion and held

that the return trip was a necessary part of the common carrier operation and that a common carrier could not escape responsibility for an accident caused by the driver while returning empty after delivering the carrier's load, on the ground that the single-trip lease had ended (*American Tr. Lines* v. *Smith,* 246 F. 2d 86, cert. denied 355 U. S. 889; *Hodges* v. *Johnson,* 52 F. Supp. 488, 492). '' If the motor carrier cannot delegate its responsibility to an independent contractor for the period of delivering the load, neither can it delegate its responsibility for that part of the trip which necessarily must be made after the load is delivered '' (*American Tr. Lines* v. *Smith, supra,* pp. 90–91).

In this case, however, there is no need to decide which is the better view with respect to accidents occurring before September 1, 1953. As to accidents occurring after that date, such as the one involved in this case, the regulations are controlling. They fix responsibility upon the common carrier for the operation of leased vehicles until the carrier has relinquished possession in accordance with the regulations and has caused its identifying insignia to be removed. As has already been pointed out, the evidence in the present record would warrant a finding by the jury that Riggs had actually consented to the use of its decal by Plessinger for the return trip. Upon the basis of such a finding, Riggs would plainly be liable under the regulations for the accident which occurred during the return trip.

Since the grounds of liability discussed herein were not spelled out adequately in the court's charge and since the related questions of fact were not specifically submitted to the jury, I agree that the present judgments will have to be reversed, but I believe that the dismissal of the complaint is wholly unwarranted. '' The Appellate Division is without power to dismiss a complaint   *   *   *   when plaintiff has made out a prima facie case '' (*Sagorsky* v. *Malyon,* 307 N. Y. 584, 586). A dismissal is authorized only if '' under that view of the evidence most favorable to plaintiff '', the plaintiff has failed to make out a prima facie case warranting submission to the jury (*Scheuer* v. *Scheuer,* 308 N. Y. 447, 450). '' [T]he facts adduced at the trial are to be considered in the aspect most favorable to plaintiffs   *   *   *   and plaintiffs are entitled to the benefit of every favorable inference which can reasonably be drawn from those facts '' (*Sagorsky* v. *Malyon, supra,* p. 586). Examining the evidence in this case in the light of that rule, the plaintiffs had clearly made out a prima facie case against Riggs. The dismissal of the complaint is therefore improper; a new trial should be ordered.

516

All concur, except HALPERN, J., who dissents in part insofar as the complaint against defendant Riggs Dairy Express, Inc., is dismissed and votes for a new trial, in a separate opinion. Present — KIMBALL, J. P., WILLIAMS, BASTOW, GOLDMAN and HALPERN, JJ.

Judgments and orders denying motion for new trial in favor of plaintiffs and against defendant Riggs Dairy Express, Inc., reversed on the law and facts, without costs and complaint against defendant Riggs Dairy Express, Inc., dismissed, without costs. In all other respects judgments in favor of plaintiffs affirmed, with costs; judgment in favor of defendant Hole and against defendant Riggs Dairy Express, Inc., reversed on the law and facts and cross claim of defendant Hole againts defendant Riggs Dairy Express, Inc., dismissed, with costs to Riggs Dairy Express, Inc., against Hole. Appeal from order dated July 24, 1958, dismissed as academic.